## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARCEL SHILO | ) | |
| *Plaintiff*, | ) | |
| | ) | CA NO. 1:16-cv-11564 |
| vs. | ) | |
| | ) | SECOND AMENDED |
| | ) | COMPLAINT |
| DITECH FINANCIAL LLC | ) | |
| FEDERAL NATIONAL MORTGAGE | ) | JURY DEMAND |
| ASSOCIATION | ) | |
| *Defendants*. | ) | |

## INTRODUCTION

1.     This complaint is brought by Plaintiff Marcel Shilo against Defendants' Ditech Financial, LLC ("Ditech") and Federal National Mortgage Association ("FNMA") for breach of contract, wrongful foreclosure of his primary residence and quieting title of the subject property located at 97 Bishop Drive, Unit 97, Framingham, MA 01702.  Plaintiff sets forth that the foreclosure sale on said residential property is null and void for the Defendants' failure to adhere to a loan modification contract entered into with the Plaintiff, wrongful foreclosure for Defendants' lack of standing to foreclosure under M.G.L. ch. 244 §14, failure to adhere to the default provisions and terms of the "statutory power of sale" as stated in paragraph 22 of said mortgage, as well as, the Defendants' failures to comply with 209 CMR 18.21A(2)(c), 15 U.S.C. § 1640, 15 U.S.C. §1641(g), 12 U.S.C. § 2605, 12 C.F.R. 1026.41 and 15 U.S.C. 1638.

2.     The Plaintiff prays that this Honorable Court declare the foreclosure sale to be void, enjoin Defendants from evicting the Plaintiff from their rightful property,

order that the ownership of the property be restored in Plaintiff name, quiet the titles of Plaintiff property by declaring Plaintiff the sole owner, and award actual, statutory and exemplary money damages to the Plaintiff

## JURISDICTION AND VENUE

3.      This action was originally filed in state court but was removed by the Defendants on July 29, 2016.  Such removal is proper pursuant to 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000.

## PARTIES

4.      Plaintiff, Marcel Shilo, resides at and claims to be the owner of real property located at 97 Bishop Drive, Unit 97, Framingham, MA 01702, which is the subject property referenced herein.

5.      Defendant Ditech Financial, LLC ("Ditech") is a mortgage servicer whose headquarters is located at 1100 Virginia Drive, Suite 100A, Fort Washington, PA 19034.  Ditech claims to be the current servicer of a mortgage loan granted by the Plaintiff on his property.

6.      Defendant Federal National Mortgage Association ("FNMA") is a government-sponsored entity located at 3900 Wisconsin Avenue NW, Washington, DC 20016. FNMA claims by Ditech to be the investor or owner of the mortgage loan that is the subject of this litigation.

7.      At all times herein mentioned, Defendants, Ditech and FNMA, both individually and collectively, are and were agents and/or joint venturers of each

other, and in doing the acts alleged herein were acting within the course and scope of such agency.

8.      Furthermore Ditech and FNMA are liable for all acts and omission made by previous servicer of the Plaintiff's mortgage loan including but not limited to GreenTree Servicing, LLC.

## FACTS

9.      Plaintiff, Marcel Shilo resides at and is the owner of real property located at 97 Bishop Drive, Unit 97, Framingham, MA 01702, which is the subject property referenced herein.  The Deed granting Plaintiff the Property was recorded on April 1, 1987 in the Middlesex County Registry of Deeds (South) Book 1799 page 512.

10.     On February 13, 2006, Plaintiff executed a promissory note to Mortgage Lenders Network ("MLN") and a mortgage to Mortgage Electronic Registration Systems ("MERS") as nominee for Mortgage Lenders Network in the amount of $192,000.00.  The Mortgage was recorded on February 17, 2006 in the Middlesex County Registry of Deeds (South) Book 46980 Page 266.  The terms of the promissory note included an interest rate of 7% and a monthly payment of principal and interest in the amount of $1277.39.

11.     In 2008 the Plaintiff suffered a vision stroke during an open-heart surgery that significantly impacted his ability to work.  The Plaintiff has been receiving SSI income since this time period.

12.     Despite his physical difficulties and reduced income Plaintiff continued to make payments in accordance with the terms of his promissory note through 2012.

13.     During 2008 through 2012 the purported servicing on the loan was transferred several times including transfers from MLN to Countrywide, from Countrywide to Bank of America, and from Bank of America to Green Tree Servicing LLC ("GreenTree") on November 1, 2011.

14.     On April 9, 2012, MERS acting "as nominee for MLN" executed an assignment to Green Tree.   The purported assignment was recorded in the Middlesex (South) Registry of Deeds on April 12, 2012 in Book 58881 at Page 568.

15.     62 months prior to the purported assignment in which MERS claimed to be acting as nominee of MLN, on or about February 5, 2007, MLN filed for Chapter 11 Bankruptcy in the District of Delaware.

16.     On or about June 10, 2009, MLN ceased all business operations as per a Chapter 11 Bankruptcy liquidation plan, including ceasing its contractual obligation to MERS, as a MERS/MERSCORP member-user of the MERS System®, rending the assignment recorded on April 12, 2012 void.

17.     MLN   cancelled   its   contractual   obligation   to   MERS   as   a MERS/MERSCORP member-user of the MERS System® in its Bankruptcy (filed on or about February 5, 2007), wherein Schedule G (Executory Contracts/Leases) fails to include MERS as a continuing executory contract and any prior contractual relationship between MERS and MLN became null and void.

18.     On or about January 23, 2012 GreenTree cashed Plaintiff's check for his timely payment of $1277.39 for January 2012.   Despite cashing this check GreenTree immediately proclaimed that Plaintiff was in default for his January

2012 payment and subsequently notified credit bureaus via false information that Plaintiff was first delinquent in January 2012.

19.     In large part due to accounting errors caused by GreenTree Plaintiff fell behind on the loan and on November 2012 Plaintiff entered into a loan modification agreement with GreenTree in which GreenTree identified itself as the "Lender" (ie. Holder of the note).   The Loan Modification agreement is dated November 20, 2012 while the Plaintiff executed the agreement of November 30, 2012 and Greentree executed the agreement on December 5, 2012.

20.     The terms of the loan modification contract between the Plaintiff and Greentree recited a new principal balance of $189,242.66 to be paid monthly at 4.25% and payments of principal and interest of $603.38 beginning January 1, 2013.   The loan modification contract was never recorded in the Middlesex (South) County Registry of Deeds.

21.     Plaintiff made payments under the loan modification agreement throughout 2013, 2014 and 2015 and remains ready willing and able to continue his performance of timely payments under the contract.

22.     On September 29, 2014, Plaintiff received via regular mail a new modification offer from GreenTree.   The offer was entitled "Modification Trial Period Plan Notice", dated September 12, 2014 and outlined a 480 month term with a interest rate of 4.5% with payments of $825.77 per month. (Exhibit 1).

23.     The new modification offer stated the following:

> " **Step 1: To Accept This Offer**
> You must make your first trial period payment by the first payment due date under your Trial Period Plan as designated below.  If you fail to make

the first trial period payment by the first payment due date and we do not receive the payment by the last day of the month in which it is due, this offer will be revoked and foreclosure proceedings may continue and a foreclosure sale may occur.

**TIME IS OF THE ESSENCE**

24.    On October 1, 2015, Plaintiff sent his payment of $825.77 to Greentree and continued to make monthly payments of $825.77 to Greentree for the next 16 months via electronic funds withdrawal.  (Exhibit 2)

25.    Despite Plaintiff's timely payments via money transfers from his checking account and despite Greentree's acceptance of such payments from Plaintiff, Greentree as well as the Defendants have falsely claimed through various communications, default letters, and right to cure letters that Plaintiff has not made his payments under the loan modification contract since February 2015.

26.    Defendants have breached their contract with the Plaintiff by falsely claiming that Plaintiff has not made timely payments since February 2015 when Plaintiff's bank account shows timely monthly payments being paid via electronic funds transfers under that contract from October 2014 throughout the end of February 2016.  (Exhibit 2)

27.    On August 31, 2015 the servicing of the Plaintiff's loan was allegedly transferred from GreenTree to Defendant Ditech.

28.    Plaintiff did not receive and Defendants failed to send to Plaintiff any notice of the servicing transfer in accordance with RESPA and any instruction as to where Plaintiff should make his payments to Ditech.

29.     Defendants failed to send and no record exists in Plaintiff's online account with Greentree or Ditech of Plaintiff's mortgage statement for September of 2015. (Exhibit 3).

30.     Beginning on October 16, 2015 Ditech began tendering checks back to Plaintiff for his mortgage payments claiming that the amounts that they accepted from the Plaintiff were not enough to reinstate the loan.  The details of the checks from Ditech to Plaintiff consist of the following: October 16, 2015 Check number 3052791 in the amount of $825.77; November 20, 2015 Check number 3072262 in the amount of $825.77; December 24, 2015 check number 3090380 in the amount of $1651.54; January 19, 2016 check number 3114292 in the amount of $825.77; February 15, 2016 check number 3130087 in the amount of $825.77.

31.     On April 9, 2016, Ditech responded to an inquiry by the Plaintiff in which the Plaintiff asked Ditech to explain why his payments were being sent back to him.  In their response Ditech claimed that Plaintiff's account was due for February 1, 2015 despite timely payments being made from Plaintiff's checking account from October 1, 2014 to February of 2016. (Exhibit 3)

32.     Due to Defendants failing to send Plaintiff a mortgage statement for September 2015, Plaintiff did not make this payment until December 2015 along with his December 2015 payment.  Plaintiff's double payment in December 2015 was returned to him on December 24, 2015 in the amount of $1651.54.

33.     On July 5, 2016, Defendant Ditech in accordance with the Statutory Power of Sale and Applicable Law sent Plaintiff a Notice of Foreclosure pursuant to M.G.L. ch. 244, § 14 and a "Certificate Relative To Foreclosing Party's Right To

Foreclose Pursuant To 209 CMR 18.21A(2)(c)" The Notice specifies that Ditech f/k/a GreenTree intends to foreclose on August 4, 2016.

34.     The Certificate pursuant to 209 CMR 18.21A(2)(c) fails to state the "chain of title and ownership of the note and mortgage from the date of the recording of the mortgage" as the Massachusetts regulation requires because the certificate fails to state any other entity that held or owned the note prior to FNMA.

35.     The Notice of Mortgage Foreclosure Sale is invalid in accordance with M.G.L. ch. 244, 14 because Ditech is not the mortgagee at the time the notice or publications were published.

**COUNT I**
**BREACH OF CONTRACT FOR DEFENDANTS' BREACH OF LOAN MODIFICATION AGREEMENT AND LACK OF GOOD FAITH AND FAIR DEALING**

36      Plaintiff repeats and re-allege every allegation above as if set forth herein in full.

37.     As described above, the Agreement between Greentree and now Defendants and Plaintiff constitutes a valid offer.

38.     By tendering payments to GreenTree and Ditech Plaintiff accepted Defendants' offer.

39.     The Trial Period offer made by Greentree did not mention that a final written modification agreement would need to be executed by the Plaintiff in order for Plaintiff to accept the modification offer. (Exhibit 1)

40.     The loan modification Agreement was supported by consideration.  First, Plaintiff payments to Defendants constitute consideration.   By making those

payments – in an amount and manner different from his previous payments – Plaintiff gave up the ability to pursue other means of saving his home.  Further, the Agreement required Plaintiff to undertake several duties that he was not otherwise obligated to undertake. These actions constitute both a detriment to the Plaintiff and a benefit to Defendants.

41.    Plaintiff and Defendants thereby formed valid contracts.

42.    Plaintiff remains ready, willing and able to perform under the contract.

43.    Defendants' breached the contract by failing to adhere to the agreement and sending the Plaintiff a inaccurate statements, default letters and notices of foreclosure.

44.    Plaintiff has suffered harm and is threatened with additional harm from Defendants and Defendants' breach, including but not limited to foreclosure, longer loan payoff times, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.  Plaintiff injury is measured by the difference between his current circumstances and the modification he was entitled to.

45.    By making the modified payments both, Plaintiff forewent other remedies that might be pursued to save his home, such as restructuring his debt under the bankruptcy code, or pursuing other strategies to deal with his default, such as selling his home. Plaintiff also has suffered additional harm in the form of foreclosure activity against his home.

46.     Defendants are obligated by contract and common law to act in good faith and to deal fairly with the Plaintiff so as to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in his performance.

47.     As a result of these failures to act in good faith and the absence of fair dealing, Defendants caused Plaintiff harm, as alleged above.  Defendants' bad faith was thus to Plaintiff detriment.

## COUNT II
## MORTGAGE POWER OF SALE

48.     Plaintiff repeats and reincorporates by reference all paragraphs above as if fully articulated herein.

49.     Massachusetts permits non-judicial foreclosure under the statutory power of sale contained at G,L. c. 183, § 21, so long as the terms of the mortgage and the statutes related to the power of sale are complied with. The statute states:

> Section 21. The following "power" shall be known as the "Statutory power of Sale", and may be incorporated in any mortgage by reference:
>
> (POWER)
>
> But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, **first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale**, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

(Emphasis added).

50.     As emphasized above, the foreclosure by power of sale requires that a foreclosing bank must "comply [] with the terms of the mortgage…" G.L. c. 183, § 21.

51.     If a bank fails to strictly comply with the power of sale and the terms of the mortgage, then a foreclosure is void. U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 428 (2014) ("Failure to comply strictly with the power of sale renders the foreclosure void.").

**52.**     The mortgage given by Plaintiff secured by the subject property states at Paragraph 22 that "22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

**53.**     The letter offered by Greentree on May 27, 2015 does not meet the minimum requirements of paragraph 22 of the mortgage because it does not inform

the Plaintiff of his right to *bring* (prosecute) a court action to assert the non existence of a default and does not accurately reflect the true balance and payments due on the mortgage loan.  (Exhibit 4).  Rather, the letter deceivingly states that the Plaintiff could only assert the non-existence of a default "in the foreclosure proceeding or any other defense".  Furthermore the prospective application of <u>Pinti</u> did not dispose of the minimum requirement of complying with the terms of the mortgage. See <u>Federal Home Loan Mortgage Corporation v. Bojarski</u>, Hampden County Land Court Do No # 15-SP-1674. (January 29, 2016)

**54.**     The foreclosure is therefore void. <u>U.S. Bank Nat. Ass'n v. Ibanez</u>, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); See also <u>Paiva v. Bank of New York Mellon</u>, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice … did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.").

**55.**     As a direct result of Defendants' actions, the Plaintiff have suffered damages including loss of title to their home, court costs, attorney's fees in defense of foreclosure and eviction.

**COUNT III**
**DECLARATORY JUDGMENT THAT DEFENDANTS LACK**
**STANDING TO FORECLOSE**

**56.**     Plaintiff repeats and incorporate all paragraphs above as if fully articulated herein.

**57.**     On or about February 13, 2006, Plaintiff granted a mortgage to Mortgage

Electronic Registration Systems, Inc. ("MERS"), as mortgagee, acting solely as nominee for lender Mortgage Lenders Network.

**58.**     On April 9, 2012, MERS, purportedly assigned the subject mortgage to GreenTree.  MERS specifically stated in the language of the assignment that it was acting as nominee of Mortgage Lenders Network

**59.**     On or about June 10, 2009, MLN ceased all business operations as per a Chapter 11 Bankruptcy liquidation plan, including ceasing its contractual obligation to MERS, as a MERS/MERSCORP member-user of the MERS System®, rending the assignment void.

**60.**     MLN   cancelled   its   contractual   obligation   to   MERS   as   a MERS/MERSCORP member-user of the MERS System® in its Bankruptcy (filed on or about February 5, 2007), wherein Schedule G (Executory Contracts/Leases) fails to include MERS as a continuing executory contract and any prior contractual relationship between MERS and MLN became null and void.

**61.**     On April 9, 2012, MERS was without contractual authority to act as nominee on behalf of lender MLN, and had nothing to assign, rendering the above noted assignment void. (See: DiLibero v. Mortgage Electronic Registration Systems, Inc. RI Supreme Court, No. 2013-190-Appeal; PC-11-4645 (Jan 14, 2015)). (See also: Culhane v. Aurora Loan Services of Nebraska, 708 F.3rd 282, 291 (1st Cir. 2013).

**62.**     As such, Greentree and Defendant, Ditech, was not the mortgagee at all times relevant to the exercise of the statutory power of sale, foreclosure, and foreclosure sale and the resulting foreclosure sale was wrongful, without legal

effect and is void.

**63.** The Plaintiff suffered damages and loss of their property as a direct result of the conduct of the Defendants.

**64.** The Plaintiffs' are entitled to a declaratory judgment determining that the foreclosure sale of their Property is void and that Plaintiff is still the owner of the subject property.

**COUNT IV**
**VIOLATION OF MASSACHUSETTS REGULATION 209 CMR**
**18.21A(2)(C)**

64. The Code of Massachusetts Regulations concerning foreclosing third party loan servicers requires that when a Notice of Foreclosure is sent to a borrower pursuant to M.G.L. ch 244, § 14 the third party loan servicer must also provide a certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage. See 209 CMR 18.21A(2)(c).

65. The certification that Defendant Ditech Financial, LLC provided to the Plaintiff on July 5, 2016 and dated April 5, 2016 failed to certify, describe or identify any chain of ownership of the promissory note from the date of the recording of the mortgage.

66. The fact that GreenTree identified itself as the "Lender" in the loan modification agreement entered into with the Plaintiff on November 20, 2012 indicates that GreenTree was in fact the holder or owner of the note at the time the agreement was made. The certification, however, fails to state that Greentree was

ever a holder of the note or describes the chain of custody of the note as required by 209 CMR 18.21A(2)(c).

67.     The Defendant Ditech's failure to certify, describe or identify any chain of ownership of the promissory note constituted a violation of said regulation and a breach of the mortgage itself by failing to adhere to the power of sale and any other remedies permitted by applicable law since 209 CMR 18.21A(2)(c) is an applicable law.

68.     The foreclosure sale conducted by the Defendants is null and void for violating 209 CMR 18.21A(2)(c) and failing to adhere to applicable law as provided in the mortgage at paragraph 22.

**COUNT V**
**DAMAGES FOR VIOLATIONS OF THE TRUTH IN LENDING ACT**
**PURSUANT TO 15 U.S.C. § 1640, 15 U.S.C. §1641(g) AND 12 U.S.C. §**
**2605**

69.     Plaintiff repeats and incorporate all paragraphs above as if fully articulated herein.

70.     The mortgage loan is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1).

71.     This is a count for damages brought by the Plaintiff, who is a consumer for Defendants' violations of the Truth in Lending Act 15 U.S.C. § 1601 et seq. ("TILA").

72.     Specifically, Plaintiff seeks the remedies provided in TILA for Defendants' failure to notify the Plaintiff in writing, within thirty days of the transfer of the mortgage of the following information in accordance with 15 U.S.C. 1641(g):

a.    the identity, address, and telephone number of the new creditor;

b.    the date of the transfer;

c.    how to reach an agent or party having authority to act on behalf of the new creditor;

d.    the location of the place where transfer of ownership of the debt is recorded;

e.    any other relevant information regarding the new creditor.

73.    Plaintiff also seeks the remedies provided in 12 U.S.C. 2605(f) for Defendant Ditech's violation of 12 U.S.C. 2605(b)(1) which provides that the transferee servicer must notify the Plaintiff with 15 days after the effective date of the transfer the following information:

a.    The effective date of the transfer of the servicing;

b.    The name, address, and toll-free or collect call telephone munber of the transferee servicer.

c.    A toll-free or collect call telephone number for (i) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing;

d.    The name and toll-free or collect call telephone number for (i) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing;

e.    The date on which the transferor servicer who is servicing the mortgagee loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.

f.    Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or any other type of optional insurance and what action, if any, the borrower must take to maintain coverage;

g.    A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

74.    Based on information and belief Ditech became the new servicer of the Plaintiff's mortgage loan on August 31, 2015.

75.     Within fifteen days and thirty days of the transfer Defendants failed to send the Plaintiff any of the notices required by these statutes set forth in this count of this complaint and even failed to send Plaintiff a statement for the month of September 2015.  Evidence of the September 2015 statement is further missing from Plaintiff's online account with Ditech.

76.     The continuous failure to send the notices of transfer and mortgage statement exhibits a pattern or practice of non-compliance on the part of the Defendants that justifies a claim of statutory damages.

77.     As a result of the failure of the Defendants to send the required notices to transfer and mortgage statement Plaintiff suffered actual damages due to the loss in equity of his home because had Plaintiff been informed of the balance of the mortgage she would have been able to pay the balance off through a refinance or otherwise.

78.     Plaintiff has suffered harm and is threatened with additional harm from Defendants and Defendants' breach, including but not limited to foreclosure, longer loan payoff times, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.  Plaintiff injury is measured by the difference between his current circumstances and the modification he was entitled to.

79.     As a result of this failure to comply with TILA. Defendants are liable to the Plaintiff for actual damages and statutory damages of up to $4000.00 per violation for the failure to send the required notices and mortage statement.

80.     The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

   a. He has incurred cost for gasoline to visit his attorney on at least six occasions, driving to her attorney's office for a round trip totaling 720 miles.  The IRS standard mileage allowance provides for .56 per mile.

   b. He has incurred attorney fees and costs in order to obtain legal assistance to rescind the purported foreclosure and to undo the illegal actions of the Defendants.  His fee agreement with her attorney provides that they will be responsible for legal fees, expenses incurred in regard to the action.  He has agreed to pay legal fees at the rate of $300.00 per hour for out of Court legal work and $350.00 per hour for in Court legal work.

   c. He has incurred emotional distress and anxiety when he attempted to find out the status of his loan and only received a response in the from of a Notice of Foreclosure sent by Defendants' attorneys.  Furthermore his emotional distress was exacerbated when he was advised that he was required to leave his home through multiple default letters.

   WHEREFORE, Plaintiff demands Judgment against Defendants for statutory damages of $2000.00 in accordance with 12 U.S.C. 2605(f) and $4000.00 in accordance with 15 U.S.C. 1640 for each of the failures to comply with the statutes set forth in this count plus actual damages plus attorneys fees and costs.

<u>COUNT IV</u>
**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE TRUTH IN
LENDING ACT BY DEFENDANTS' FAILURE TO SEND THE
PLAINTIFF A MONTHLY MORTGAGE STATEMENT EACH
MONTH PURSUANT TO THE PROVISIONS OF 12 C.F.R. 1026.41 AND
15 U.S.C. 1638**

**81.**     Plaintiff repeats and incorporate all paragraphs above as if fully articulated herein.

**82.**     This is an action for damages brought by the Plaintiff, who is a consumer, for Defendants' violations of the Truth in Landing Act, 15 U.S.C. § 1601 et. seq. ("TILA").

**83.**     Specifically, Plaintiff seeks the remedies provided in TILA for Defendants' failure to send the Plaintiff monthly mortgage statements as required by 15 U.S.C. §§ 1638 and 12 C.F.R. 1026.41 respectively.

**84.**     This Court has jurisdiction pursuant to 15 U.S.C. § 1640 to provide private remedies for failure to respond to provide a borrower monthly statements.   15 U.S.C. § 1640 provides for statutory damages of the type alleged in this Complaint to a range of not less than $400.00 nor greater than $4000.00.   Jurisdiction is further conferred on this Court by 15 U.S.C. § 1640(e).

**85.**     The Defendant, Ditech, is a mortgage loan servicing company that services residential mortgage loans.  Ditech is the servicer of the mortgage loan which is the subject of this complaint.

**86.**     Defendant, FNMA, is the entity that claims to own and hold the Plaintiff's note and mortgage.

**87.**     The mortgage loan is a "federally related mortgage loan" as defined in 12

U.S.C. § 2602(1).

**88.**     Plaintiff has not been sent a monthly statement in compliance with 12

C.F.R. 1026.41 in September 2015 and said statement is missing from Plaintiff's

online account with Ditech.

**89.**     Pursuant to 12 C.F.R. 1026.41, Ditech was required to send the plaintiff a

monthly mortgage statement that provides the following information"

> **(d)** *Content and layout of the periodic statement.* The periodic statement required by this section shall include:
> **(1)** *Amount due.* Grouped together in close proximity to each other and located at the top of the first page of the statement:
> **(i)** The payment due date;
> **(ii)** The <u>amount</u> of any late payment fee, and the date on which that fee will be imposed if payment has not been received; and
> **(iii)** The <u>amount</u> due, shown more prominently than other disclosures on the page and, if the transaction has multiple payment options, the <u>amount</u> due under each of the payment options.
> **(2)** *Explanation of amount due.* The following items, grouped together in close proximity to each other and located on the first page of the statement:
> **(i)** The monthly payment <u>amount</u>, including a breakdown showing how much, if any, will be applied to principal, interest, and escrow and, if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed;
> **(ii)** The total sum of any fees or charges imposed since the last statement; and
> **(iii)** Any payment <u>amount</u> past due.
> **(3)** *Past Payment Breakdown.* The following items, grouped together in close proximity to each other and located on the first page of the statement:
> **(i)** The total of all payments received since the last statement, including a breakdown showing the <u>amount</u>, if any, that was applied to principal, interest, escrow, fees and charges, and the <u>amount</u>, if any, sent to any suspense or unapplied funds account; and
> **(ii)** The total of all payments received since the beginning of the current calendar year, including a breakdown of that total showing the <u>amount</u>, if any, that was applied to principal, interest, escrow, fees and charges, and the <u>amount</u>, if any, currently held in any suspense or unapplied funds account.

(**4**) *Transaction activity.* A list of all the transaction activity that occurred since the last statement. For purposes of this paragraph (d)(4), *transaction activity* means any activity that causes a credit or debit to the <u>amount</u> currently due. This list must include the date of the transaction, a brief description of the transaction, and the <u>amount</u> of the transaction for each activity on the list.

(**5**) *Partial payment information.* If a statement reflects a partial payment that was placed in a suspense or unapplied funds account, information explaining what must be done for the funds to be applied. The information must be on the front page of the statement or, alternatively, may be included on a separate page enclosed with the periodic statement or in a separate letter.

(**6**) *Contact information.* A toll-free telephone number and, if applicable, an electronic mailing address that may be used by the <u>consumer</u> to obtain information about the <u>consumer</u>'s account, located on the front page of the statement.

(**7**) *Account information.* The following information:

(**i**) The <u>amount</u> of the outstanding principal balance;

(**ii**) The current interest rate in effect for the mortgage loan;

(**iii**) The date after which the interest rate may next change;

(**iv**) The existence of any prepayment penalty, as defined in § 1026.32(b)(6)(i), that may be charged;

(**v**) The Web site to access either the Bureau list or the HUD list of homeownership counselors and counseling organizations and the HUD toll-free telephone number to access contact information for homeownership counselors or counseling organizations; and

(**8**) *Delinquency information.* If the <u>consumer</u> is more than 45 days delinquent, the following items, grouped together in close proximity to each other and located on the first page of the statement or, alternatively, on a separate page enclosed with the periodic statement or in a separate letter:

(**i**) The date on which the <u>consumer</u> became delinquent;

(**ii**) A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

(**iii**) An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the <u>amount</u> remaining past due from each <u>billing cycle</u> or, if any such payment was fully paid, the date on which it was credited as fully paid;

(**iv**) A notice indicating any loss mitigation program to which the <u>consumer</u> has agreed, if applicable;

(**v**) A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

(**vi**) The total payment <u>amount</u> needed to bring the account current; and

**(vii)** A reference to the homeownership counselor information disclosed pursuant to <u>paragraph (d)(7)(v)</u> of this section.

90.     No monthly periodic statements had been sent to the Plaintiff in September 2015 which was in compliance with Regulation Z.

91.     On none of the statements sent to the Plaintiffs in September 2015 has Ditech included the following information as required in the event that the loan is at least 45 days in arrears:

     a.  A notification of possible risks, such as foreclosure, and expenses, that may be incurred if the delinquency is not cured;

     b.  An account history showing, for the previous six months or the period since the last time the account was current, whichever is shorter, the amount remaining past due from each billing cycle or, if any such payment was fully paid, the date on which it was credited as fully paid;

     c.  A notice of whether the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, if applicable;

     d.  A reference to the homeownership counselor information disclosed pursuant to paragraph (d)(7)(v) of this section.

92.     The failure to send statements and specifically excluding any such September 2015 statement in Plaintiffs online account exhibits a pattern or practice of non-compliance with the TILA and 12 C.F.R. 1026.41 on the part of the Defendants that justifies a claim of statutory damages.

93.     As a result of the failure of the Defendants to send mortgage statements Plaintiff suffered actual damages due to the loss in equity of his home because had Plaintiff been informed of the balance of the mortgage he would have been able to pay the balance off through a private refinance or otherwise.

94.     Plaintiff has also suffered actual damages and harm and is threatened with additional harm from Defendants and Defendants' violations of the statutes set forth in this count, including but not limited to foreclosure, longer loan payoff times, higher principle balances, improper negative reporting to credit bureaus; inappropriate fees and charges assessed to them, including broker price opinion fees, inspection fees, attorney's fees, "process management" fees, late fees and other charges associated with delinquency and default, and increased accrued interest.   Plaintiff injury is measured by the difference between his current circumstances and the modification he was entitled to.

95.     As a result of this failure to comply with 12 C.F.R. 1026.41 and TILA. Defendants are liable to the Plaintiff for actual damages and statutory damages of up to $4000.00 per violation for the failure to send the September 2015 statement pursuant to the terms of the mortgage, which did not comply with Regulation Z.

96.     The Plaintiff has incurred actual damages, costs and legal fees in regard to this action:

> a.  He has incurred cost for gasoline to visit his attorney on at least six occasions, driving to her attorney's office for a round trip totaling 800 miles.  The IRS standard mileage allowance provides for .56 per mile.

b.  He has incurred attorney fees and costs in order to obtain legal assistance to rescind the purported foreclosure and to undo the illegal actions of the Defendants.  His fee agreement with her attorney provides that they will be responsible for legal fees, expenses incurred in regard to the action.  He has agreed to pay legal fees at the rate of $300.00 per hour for out of Court legal work and $350.00 per hour for in Court legal work.

c.  He has incurred emotional distress and anxiety when he attempted to find out the status of his mortgage account and only received a response in the from of a Notice of Foreclosure sent by Defendants' attorneys.  Furthermore his emotional distress was exacerbated when he was advised by the purported purchaser at the foreclosure sale that she was required to leave his home.

d.  He has incurred legal fees and costs for the prosecution of this action.  His fee agreement with her attorney provides that he will be responsible for legal fees expenses incurred in regard to this action. He has agreed to pay legal fees at the rate of $300.00 per hour for out of Court legal work and $350.00 per hour for in Court legal work.

WHEREFORE, Plaintiff demands Judgment against Defendants for statutory damages of at least $4000.00 for each of the failures to send a monthly mortgage statement in conformity with 12 C.F.R. 1026.41 to Plaintiff plus actual damages plus attorneys fees and costs.

## COUNT V
## QUIET TITLE

97.     Plaintiff repeat and incorporate all paragraphs above as if fully articulated herein.

98.     The real estate at issue is located at 97 Bishop Drive, Unit 97, Framingham, MA 01702.

99.     The Plaintiff and Defendants both make claim to the fee simple interest in the aforesaid property.

100.    The Plaintiff Marcel Shilo claims ownership and title to the Property from a Deed granting him the property recorded on April 1, 1987 in the Middlesex (South) Registry of deeds in Book 1799 at page 512.  The name and address of the Plaintiff has been set forth herein above.

101.    The Defendant, Ditech and FNMA claim ownership and title to the Property from a void Mortgage Assignment recorded in the Middlesex (South) Registry of Deeds in Book 58881 at Page 568, a void Mortgagee's Foreclosure Sale and a subsequent void Foreclosure Deed.  FNMA's address is set forth herein above.

102.    Defendant, Ditech, instituted a non-judicial foreclosure proceeding and foreclosure sale to foreclose on a mortgage secured by the subject property in violation of paragraph 22 of the mortgage, G. L. c. 183, § 21, and G.L. c. 244, §§ 11, 15A, and 35A.

103.    The resulting foreclosure sale was wrongful, without legal effect and is void.

104.    The foreclosure sale conducted by Ditech and FNMA is also void as against public policy.

105.    The Plaintiff, Marcel Shilo, have suffered damages and loss of his property as a direct result of the conduct of Defendants.

106.    The Plaintiff, Marcel Shilo, is entitled to a judgment quieting the title the Property and declaring that he is still the owner of the subject Property.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL.

Dated: September 9th, 2016

>
> Respectfully Submitted, Plaintiff,
> Marcel Shilo
> By his Attorney,
>
> */s/ Todd S. Dion*
> _____
> Todd S. Dion Esq. (BBO#659109)
> 1599 Smith Street
> North Providence, RI 02911
> 401-353-1230 Phone
> 401-353-1231 Fax
> toddsdion@msn.com