UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARCEL SHILO | ) | |
|     *Plaintiff*, | ) | |
| | ) | CA NO. 16-CV-11564-JGD |
| vs. | ) | |
| | ) | |
| | ) | **EMERGENCY MOTION FOR** |
| DITECH FINANCIAL LLC | ) | **PRELIMINARY INJUNCTION** |
| FEDERAL NATIONAL MORTGAGE | ) | **AND INCORPORATED** |
| ASSOCIATION | ) | **MEMORANDUM OF LAW** |
|     *Defendants*. | ) | |

## PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65, the Plaintiff, Marcel Shilo, having received from Harmon Law Offices, PC a Notice of Foreclosure Sale on his home to be auctioned on November 17th, 2016, moves this Honorable Court for a preliminary injunction restraining and enjoining Defendants from conducting a foreclosure auction on his property located at 97 Bishop Drive, Framingham, MA 01702. Plaintiff respectfully request the court consider this motion and place it down for hearing on Monday November 14th, 2016 or Tuesday November 15th, 2016 at 2pm as both counsel for both Plaintiff and Defendant are available at those times and due to the pending foreclosure set for Thursday, November 17th, 2016.

A preliminary injunction is warranted because Plaintiffs are likely to prevail on their claims that challenge the default of the mortgage and standing of the defendants to foreclose. The Plaintiffs have been told the mortgage defaulted in February 2015, however, they have provided documentation to Defendant's counsel from their bank showing automated payments tendered to the Defendant's at that time. In addition, the Plaintiffs will suffer irreparable harm by the foreclosure on their property absent the injunction, the balance of harms favors

injunctions and the public interest will be served by an injunction prohibiting a wrongful foreclosure.

In support of his Motion, the Plaintiff relies on the Verified Complaint and the exhibits submitted as a part of this motion, as well as Plaintiff's Memorandum in Support of Motion for Preliminary Injunction incorporated herein.

WHEREFORE, the Plaintiff' respectfully request this Honorable Court grant his Motion for Preliminary Injunction.

## **MEMORANDUM OF LAW**

### **Facts**

Plaintiff, Marcel Shilo resides at and is the owner of real property located at 97 Bishop Drive, Unit 97, Framingham, MA 01702, which is the subject property referenced herein. The Deed granting Plaintiff the Property was recorded on April 1, 1987 in the Middlesex County Registry of Deeds (South) Book 1799 page 512. On February 13, 2006, Plaintiff executed a promissory note to Mortgage Lenders Network ("MLN") and a mortgage to Mortgage Electronic Registration Systems ("MERS") as nominee for Mortgage Lenders Network in the amount of $192,000.00. The Mortgage was recorded on February 17, 2006 in the Middlesex County Registry of Deeds (South) Book 46980 Page 266. The terms of the promissory note included an interest rate of 7% and a monthly payment of principal and interest in the amount of $1277.39.

In 2008 the Plaintiff suffered a vision stroke during an open-heart surgery that significantly impacted his ability to work. The Plaintiff has been receiving SSI income since this time period. Despite his physical difficulties and reduced income Plaintiff continued to make payments in accordance with the terms of his promissory note through 2012.

During 2008 through 2012 the purported servicing on the loan was transferred several times including transfers from MLN to Countrywide, from Countrywide to Bank of America, and from Bank of America to Green Tree Servicing LLC ("GreenTree") on November 1, 2011. On April 9, 2012, MERS acting "as nominee for MLN" executed an assignment to Green Tree. The purported assignment was recorded in the Middlesex (South) Registry of Deeds on April 12, 2012 in Book 58881 at Page 568. 62 months prior to the purported assignment in which MERS claimed to be acting as nominee of MLN, on or about February 5, 2007, MLN filed for Chapter 11 Bankruptcy in the District of Delaware. On or about June 10, 2009, MLN ceased all business operations as per a Chapter 11 Bankruptcy liquidation plan, including ceasing its contractual obligation to MERS, as a MERS/MERSCORP member-user of the MERS System®, rending the assignment recorded on April 12, 2012 void. MLN cancelled its contractual obligation to MERS as a MERS/MERSCORP member-user of the MERS System® in its Bankruptcy (filed on or about February 5, 2007), wherein Schedule G (Executory Contracts/Leases) fails to include MERS as a continuing executory contract and any prior contractual relationship between MERS and MLN became null and void.

In large part due to accounting errors caused by GreenTree Plaintiff fell behind on the loan and on November 2012 Plaintiff entered into a loan modification agreement with GreenTree in which GreenTree identified itself as the "Lender" (ie. Holder of the note). The Loan Modification agreement is dated November 20, 2012 while the Plaintiff executed the agreement of November 30, 2012 and Greentree executed the agreement on December 5, 2012. The terms of the loan modification contract between the Plaintiff and Greentree recited a new principal balance of $189,242.66 to be paid monthly at 4.25% and payments of principal and interest of

$603.38 beginning January 1, 2013. The loan modification contract was never recorded in the Middlesex (South) County Registry of Deeds.

Plaintiff made payments under the loan modification agreement throughout 2013, 2014 and 2015 and remains ready willing and able to continue his performance of timely payments under the contract. Despite Plaintiff's timely payments via checks and money transfers from his checking account and despite Greentree's acceptance of such payments from Plaintiff, Greentree as well as the Defendants have falsely claimed through various communications, default letters, and right to cure letters that Plaintiff has not made his payments under the loan modification contract since February 2015. (SEE ATTACHED EXHIBIT SHOWING DEFAULT LETTER AND VERIFIED STATEMENT FROM REPRESENTATIVE FROM PLAINTIFF"S BANK ACCOUNT AT DIGITAL FEDERAL CREDIT UNION DATED JULY 27, 2016 THAT ALL PAYMENTS WERE SENT TO GREENTREE VIA ELECTRONIC FUNDS TRANSFER)

Defendants have breached their contract with the Plaintiff by falsely claiming that Plaintiff has not made timely payments since February 2015 when Plaintiff's bank account shows timely monthly payments being paid via electronic funds transfers under that contract from February 2015 throughout the end of 2015. On August 31, 2015 the servicing of the Plaintiff's loan was allegedly transferred from GreenTree to Defendant Ditech. Plaintiff did not receive and Defendants failed to send to Plaintiff any notice of the servicing transfer in accordance with RESPA and any instruction as to where Plaintiff should make his payments to Ditech. Defendants failed to send and no record exists in Plaintiff's online account with Greentree or Ditech of Plaintiff's mortgage statement for September of 2015.

Beginning on October 16, 2015 Ditech began tendering checks back to Plaintiff for his mortgage payments claiming that the amounts that they accepted from the Plaintiff were not

enough to reinstate the loan. The details of the checks from Ditech to Plaintiff consist of the following: October 16, 2015 Check number 3052791 in the amount of $825.77; November 20, 2015 Check number 3072262 in the amount of $825.77; December 24, 2015 check number 3090380 in the amount of $1651.54; January 19, 2016 check number 3114292 in the amount of $825.77; February 15, 2016 check number 3130087 in the amount of $825.77.

On April 9, 2016, Ditech responded to an inquiry by the Plaintiff in which the Plaintiff asked Ditech to explain why his payments were being sent back to him. In their response Ditech claimed that Plaintiff's account was due for February 1, 2015 despite timely payments being made from Plaintiff's checking account from February 1, 2015 to August of 2015.

Due to Defendants failing to send Plaintiff a mortgage statement for September 2015, Plaintiff did not make this payment until December 2015 along with his December 2015 payment. Plaintiff's double payment in December 2015 was returned to him on December 24, 2015 in the amount of $1651.54.

On July 5, 2016, Defendant Ditech in accordance with the Statutory Power of Sale and Applicable Law sent Plaintiff a Notice of Foreclosure pursuant to M.G.L. ch. 244, § 14 and a "Certificate Relative To Foreclosing Party's Right To Foreclose Pursuant To 209 CMR 18.21A(2)(c)" The Notice specifies that Ditech f/k/a GreenTree intends to foreclose on August 4, 2016. The Certificate pursuant to 209 CMR 18.21A(2)(c) fails to state the "chain of title and ownership of the note and mortgage from the date of the recording of the mortgage" as the Massachusetts regulation requires because the certificate fails to state any other entity that held or owned the note prior to FNMA. The Notice of Mortgage Foreclosure Sale in invalid in accordance with M.G.L. ch. 244, 14 is invalid because Ditech is not the mortgagee at the time the notice or publications were published.

## Standard of Review

Entitlement to a preliminary injunction requires that the movant demonstrate that (1) the movant has a substantial likelihood of success on the merits, (2) the movant bears a significant risk of irreparable harm if the provisional relief is withheld, (3) the balance of equities is in its favor, and (4) the granting of the injunction will not adversely affect the public interest. Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003), Winter v. Nat'l Res. Def. Council, 555 U.S. 7, 20 (2008); People's Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 9 (1st Cir. 2012); Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011).

If the court is convinced that the failure to issue an injunction would subject the moving party to a substantial risk of irreparable harm, it balances this risk against the risk of harm which granting the injunction would create for the opposing party. *Id*. A preliminary injunction should issue where the balance of the risks favors the moving party. *Id*. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617, 405 N.E.2d 106 (1980).

## Argument

In his complaint, the Plaintiff sets forth that the assignment of mortgage and any foreclosure sale on said residential property is null and void for the Defendants' failure to adhere to a loan modification contract entered into with the Plaintiff, wrongful foreclosure for Defendants' lack of standing to foreclosure under M.G.L. ch. 244 §14, failure to adhere to the default provisions and terms of the "statutory power of sale" as stated in paragraph 22 of said mortgage, as well as, the Defendants' failures to comply with 209 CMR 18.21A(2)(c), 15 U.S.C. § 1640, 15 U.S.C. §1641(g), 12 U.S.C. § 2605, 12 C.F.R. 1026.41 and 15 U.S.C. 1638.

The Plaintiff sets forth that Defendants were not the mortgagee at all times necessary to notify and foreclose on said property because the previous assignment of mortgage from MERS as nominee of Mortgage Lenders Network, to Greentree is void. The allegations in the complaint establish that Mortgage Lenders Network terminated its nominee relationship with MERS via bankruptcy prior to the alleged assignment of the Plaintiff's mortgage.

Moreover, the most striking and egregious of facts set forth by the Plaintiff through his verified complaint and the exhibits attached to this memorandum is the Defendants inaccurate and patently false default letter and right to cure letter. As shown in the exhibits the default letter claims that Plaintiff did not make his monthly payments due from November 1, 2014 through May 1, 2015 in the amount of $809.35 ($603.38 Principal and Interest plus $205.97 Escrow). Contrary to this default letter, the Plaintiff's attached statement created, executed and verified by Alanna M. Kowalski, a Member Service Representative from Digital Federal Credit Union shows that the required payments from the Plaintiff's bank account were successfully transferred electronically to Greentree during all relevant time periods. In fact the Plaintiff's bank account shows that he paid more than the required amounts ($825.77 paid monthly from November 2014 through February 2016).

**A. Plaintiff is likely to succeed on the merits**

In the instant action, the Plaintiff's likelihood of success on the merits is strongly supported by the facts and case law. In his complaint the Plaintiff has pled well-supported allegations that the foreclosing entity did not comply strictly with the terms of the mortgage. In Massachusetts a foreclosure by power of sale requires that a foreclosing bank must "comply [] with the terms of the mortgage…" (G.L. c. 183, § 21). Further, if a bank fails to strictly comply with the power of sale and the terms of the mortgage, then a foreclosure is void.

See: U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 428 (2014) ("Failure to comply strictly with the power of sale renders the foreclosure void."); Paiva v. Bank of New York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice … did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.")

Additionally, the Plaintiff alleges that the foreclosing entity was not the mortgagee at all times relevant to the exercise of the statutory power of sale, foreclosure, and foreclosure sale and the resulting foreclosure sale was wrongful, without legal effect and is void. The foreclosing entity, Defendant Ditech, purportedly became the mortgagee via an from Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") acting solely as nominee for Mortgage Lender network to Greentree Servicing LLC. However, prior to the assignment in which MERS was claiming to act on behalf of Mortgage Lenders Network, Mortgage Lenders Network ceased all business operations, including ceasing its contractual obligation to Defendant, MERS, as a MERS/MERSCORP member-user of the MERS System®.

Furthermore, Mortgage Lenders Network cancelled its contractual obligation to Defendant, MERS, as a MERS/MERSCORP member-user of the MERS System® in its Bankruptcy Petition (wherein Schedule G (Executory Contracts/Leases) fails to include MERS as a continuing executory contract and any prior contractual relationship between MERS and Mortgage Lenders Network became null and void.

MERS, was without contractual authority to act as nominee on behalf of lender Mortgage Lenders Network and had nothing to assign, rendering the above noted assignment void. (See DiLibero v. Mortgage Electronic Registration Systems, Inc. RI Supreme Court, No. 2013-190-

Appeal; PC-11-4645 (Jan 14, 2015)). (See also Culhane v. Aurora Loan Services of Nebraska, 708 F.3rd 282, 291 (1st Cir. 2013). As such, all subsequent assignment in the chain of assignments leading to Ditech are void, Ditech was not the mortgagee at all times relevant to the exercise of the statutory power of sale, foreclosure, and foreclosure sale and the resulting foreclosure sale was wrongful, without legal effect and is void.

Lastly, as shown in the exhibits the default letter claims that Plaintiff did not make his monthly payments due from November 1, 2014 through May 1, 2015 in the amount of $809.35 ($603.38 Principal and Interest plus $205.97 Escrow). Contrary to this default letter, the Plaintiff's attached statement created, executed and verified by Alanna M. Kowalski, a Member Service Representative from Digital Federal Credit Union shows that the required payments from the Plaintiff's bank account were successfully transferred electronically to Greentree during all relevant time periods. In fact the Plaintiff's bank account shows that he paid more than the required amounts ($825.77 paid monthly from November 2014 through February 2016). This clearly represents a breach of contract on the part of the Defendants or at the very least a serious mistake in accounting that would make any foreclosure activity null and void.

**B. Plaintiff' will suffer irreparable harm**

There are few greater harms that can be done to an individual, or a family, than to be foreclosed on and forcibly evicted from their home. Should Defendants not be enjoined, the Plaintiff duly noted herein, will suffer that very fate. Once foreclosed and evicted, Plaintiff will be irreparably harmed.

"On the basis of [an abbreviated] record, the moving party must show that, without the requested relief, it may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits." See Packaging Indus. Grp., Inc. v. Cheney, 405 N.E.2d 106, 111

(1980). Should Defendants gain possession and/or convey the property, the Plaintiff would clearly suffer a loss of rights which cannot be vindicated should they prevail on the merits of their claims.

A piece of real property is unique and its loss is an irreparable injury. Due to its nature, the Plaintiff's loss is not fully compensable by money damages and would be difficult to calculate. The injury includes relocation costs, commuting to a new location, additional time needed to relocate, loss of community and stability and the high potential for homelessness. Because of the magnitude and nature of the injury, the Plaintiff cannot be fully compensated by money damages alone and therefore the harm is irreparable.

Additionally, there exists no other remedy Plaintiff herein can seek to prevent the irreparable harm that will befall him should the relief they seek herein not issue, nor can a trial on the merits can be conducted before the injury occurs. (See Owen M. Fiss & Doug Rendlemen, Injunctions 59 (2nd ed. 1984). In the context of a request for a permanent injunction, "irreparable harm" means that the moving party does not have an adequate remedy at law, ordinarily damages.). (See also: Packaging Indus. Grp. Id. at 106, 112 n.11. "In the context of a preliminary injunction the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity."). (See generally: 11 C.A. Wright & A.R. Miller, § 2948, at 431-441: "Irreparable harm is absent if trial on the merits can be conducted before the injury occurs.").

As no other remedy exists to Plaintiff' preventing the harm, as Plaintiff' may suffer a loss of rights that cannot be vindicated should they prevail after a full hearing on the merits, and a trial on the merits cannot be conducted before the potential injury occurs, the Plaintiff has satisfied that he will be irreparably harmed should the relief they herein seek not issue.

### C. Balance of Equities

"…[W]hen asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the Judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." (See Packaging Indus. Grp. *Id.* at 112, citing Leubsdorf, at 540-544; Note, Probability of Ultimate Success Held Unnecessary for Grant of Interlocutory Injunction, 71 Colum. L. Rev. 165 (1971); 11 C.A. Wright & A.R. Miller, Federal Practice and Procedure, § 2948, at 453-454 (1973)).

As noted above, the Plaintiff entered into an agreement with Defendants to pay his mortgage under a loan modification in which he is ready willing and able to continue. In light of Plaintiff's payments to Defendants and his continued willingness to do so, the risk of harm to the Defendants is minimal, evidencing that the balance of equities in this case clearly cuts in favor of the moving party Plaintiff'.

### D. The Injunction is in the Public Interest

It is in the public interest of a State to prevent wrongful evictions and maintain for its citizens the broadest protections possible under State eviction laws to avoid displacement and resultant loss of housing, which, due to housing's uniqueness as the most costly and difficult to change necessity of life, causes overcrowding, unsafe and unsanitary conditions, blight, burdens

on community services, wasted resources, homelessness, emigration from the State and personal hardship, which is particularly severe for vulnerable seniors, the disabled, the frail, minorities, large families and single parents.

As such, it is in the public interest here to prevent the Plaintiff' from suffering the irreparable harm of being forcibly evicted from their rightful property and home, especially in light of their clear demonstration of a likelihood of success of their claims on the merits and the minimal risk of harm to the non-moving party.

## Conclusion

Here, as the Plaintiff' has satisfied the standards that he has a likelihood of success on the merits, that he will suffer irreparable harm, that the balance of equities in this case clearly cuts in his favor, and that the injunction is in the Public Interest, a preliminary injunction may properly issue.

WHEREFORE, the Plaintiff, Marcel Shilo respectfully request this Honorable Court grant their Motion for Preliminary Injunction, enjoining Defendant from conducting a foreclosure sale on his property and forcibly evicting him and his family from his home and rightful property.

Dated: November 7th, 2016

    Respectfully Submitted, Plaintiff,
    Marcel Shilo
    By his Attorney, Todd S. Dion,

    /s/ Todd S. Dion
    _____
    Todd S. Dion Esq. (#659109)
    1599 Smith Street
    North Providence, RI 02911
    401-353-1230 Phone
    401-353-1231 Fax
    toddsdion@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 7th, 2016, a true copy of the foregoing document was served electronically on the Defendants through the CM/ECF system.

/s/ Todd S. Dion
Todd S. Dion