_____

|  |  |  |
|---|---|---|
| MARCEL SHILO, | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-11564-DJC |
| | ) | |
| DITECH FINANCIAL LLC AND | ) | |
| FEDERAL NATIONAL | ) | |
| MORTGAGE ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## DEFENDANTS' AMENDED MOTION FOR JUDGMENT ON THE PLEADINGS[1]
### (Memorandum of Law)

Pursuant to Rule 12, Defendants Ditech Financial LLC ("Ditech"), formerly known as

Green Tree Servicing LLC, and Federal National Mortgage Association ("Fannie Mae") move

for judgment on the pleadings on all counts of the Second Amended Complaint filed by Plaintiff

Marcel Shilo ("Shilo").

## INTRODUCTION

This is an action by Shilo, the former owner of property located at 97 Bishop Drive,

Framingham, Massachusetts (the "Property") against Fannie Mae, the owner of his mortgage

loan, and Ditech, the foreclosing mortgagee. Shilo asserts claims for equitable and monetary

relief against Defendants alleging that:

- Ditech breached a contract between the parties for a permanent loan modification and the
  covenant of good faith and fair dealing implied therein (Count I);

---

[1] The Motion for Judgment on the pleadings is amended to correct typographical errors, including
references to "BANA." Plaintiff does not have an objection to Defendants' amendment to correct these
errors.

- Ditech lacked standing to foreclose because the mortgage was not properly assigned to it (Count III), Ditech failed to comply with paragraph 22 of the mortgage (Count II), and failed to send a pre-foreclosure certification in compliance with Massachusetts regulations (Count IV);

- Defendants violated the Truth in Lending Act ("TILA") by failing to send a periodic monthly statement in September 2015 and failing to provide notice of the transfer of the mortgage (Counts V and VI);

- Defendants violated the Real Estate Settlement Procedures Act ("RESPA") by failing to notify Shilo of a transfer in the servicing of his loan (Count V).

He also requests the Court quiet title to the Property to him (Count VII).

Shilo's claims should be dismissed. First, the contract claims fail because Shilo did not sign a permanent loan modification agreement, which was a condition precedent to a modification and is also required under the statute of frauds to modify a mortgage. Second, strict compliance with paragraph 22 of the mortgage is not required for Ditech to foreclose because *inter alia* the notice of default and right to cure was sent before the Supreme Judicial Court issued its decision in <u>Pinti v. Emigrant Mortg. Co., Inc.</u>, 472 Mass. 226 (2015), requiring strict compliance prospectively only. Third, as a matter of law, the assignment of mortgage to Ditech was valid. Fourth, there is no private right of action under 209 C.M.R. 18.21(A) and, in any event, Ditech provided a pre-foreclosure certification identifying the holder of the note and mortgage that complied with the regulation. Fifth, neither Fannie Mae nor Ditech can be liable under TILA as a matter of law. Sixth, as a matter of law, Ditech was not obligated to provide a servicing transfer notice under RESPA due to a merger and name change. Finally, since the underlying claims challenging the foreclosure fail, the quiet title claim fails as well.

ME1 23864956v.1

## FACTS AS ALLEGED

On February 13, 2006, Shilo signed a note in the original principal amount of $192,000 (the "Note") payable to Mortgage Lenders Network ("MLN") and a mortgage granting Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for MLN, a security interest in the Property (the "Mortgage"). (Second Amended Complaint ("Complaint") at ¶¶ 9-10; Note, a copy of which is attached as **Exhibit A**.)[2]

Shilo claims that in 2007, MLN filed for bankruptcy and in 2009 ceased all business operations. (Complaint at ¶¶ 15-16.)

On November 1, 2011, Green Tree Servicing LLC ("Green Tree") began servicing the loan. (Complaint at ¶ 13.)

By "Assignment of Mortgage" dated April 9, 2012, MERS transferred the Mortgage to Green Tree. (Complaint at ¶ 14.)

In 2012, Shilo defaulted. (Complaint at ¶ 19.) Effective November 20, 2012, Green Tree agreed to permanently modify the Loan, and Shilo and Green Tree signed a "Loan Modification Agreement." (Id.; Loan Modification Agreement, a copy of which is attached as **Exhibit B**.)[3]

Shilo alleges that on or about September 29, 2014, he received a Modification Trial Period Plan Notice from Green Tree (the "TPP"). (Complaint at ¶ 22; TPP, a copy of which is attached as **Exhibit C**.)[4] The TPP provided that:

> **Step 1: To Accept This Offer**
> You must make your first trial period payment by the first payment date under our Trial Period Plan as designated below.

---

[2] The Note may be considered by the Court because it is referred to in the Complaint. See Miss. Pub. Employees Ret. Sys. v. Boston Scientific Corp., 523 F.3d 75, 86 (1st Cir. 2008); Clorox Co. v. Proctor and Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000).

[3] The Loan Modification Agreement can be considered because it is referred to in the Complaint. See supra n. 1.

[4] The TPP can be considered because it is attached to and referenced in the Complaint. See supra n. 1.

ME1 23864956v.1

\*\*\*

**Step 2: Make Trial Period Payments**
To qualify for a permanent modification with an amortization term
of **480 months**, you must make the trial period payments below by
the due dates indicated:

**Trial Period Plan for 480 Month Term**<br>
1st payment: $825.77 by 10/01/2014<br>
2nd payment: $825.77 by 11/01/2014<br>
3rd payment: $825.77 by 12/01/2014

\*\*\*

**Once you have** successfully made each of the payments above by
their due dates, you have **submitted two signed copies of your
modification agreement,** you have met all of the applicable
qualified requirements, **and we have signed the modification
agreement, your mortgage will be permanently modified** in
accordance with the terms of your modification agreement.

\*\*\*

**As long as you have met all of the applicable qualification
requirements, once you** make all of your required trial period
payments on time **and return to us two copies of a modification
agreement with your signature, we will sign one copy and send
it back to you** so that you will have a fully executed modification
agreement detailing the terms of the modified account.

(TPP) (emphasis added). Shilo claims that he made all required payments, Complaint at ¶ 24, but nowhere does Shilo allege that he submitted two signed copies of a permanent modification agreement. (Complaint.)[5]

By letter dated May 27, 2015, Green Tree informed Shilo that his loan was in default and that that he had the right to cure the default by paying $5,501.39 plus any other amount that may become due by October 27, 2015, and that the failure to cure the default may result in foreclosure. (Complaint at ¶ 53; Notice of Default, a copy of which is attached as **Exhibit D**.)[6]

---

[5] In fact, the Court has already concluded that there is no dispute that Shilo did not sign a permanent loan modification agreement. (Transcript of Telephone Conferenced dated November 16, 2016 at 8 ("I don't think there's any dispute in the records that he did not [sign the proposed permanent loan modification agreement] . . . .")

[6] The Notice of Default can be considered because it is referred to in the Complaint. See supra n. 1.

On August 31, 2015, Ditech Mortgage Corp. and DT Holdings LLC merged with and into Green Tree Servicing LLC and Green Tree Servicing LLC changed its name to "Ditech Financial LLC" (Green Tree and Ditech are hereinafter collectively referred to as "Ditech"). (Certificate of Amendment of a Foreign Limited Liability Company with Certificate of Merger, a genuine copy of which is attached as **Exhibit E**.)[7]

Shilo alleges that Ditech did not send a periodic monthly statement for September 2015. (Complaint ¶ 29.)

By letter dated July 5, 2016, Harmon Law Offices, P.C. ("Harmon"), Ditech's foreclosure counsel, informed Shilo that a foreclosure sale was scheduled for August 4, 2016 (the "Notice of Sale"). (Complaint at ¶ 33; Notice of Sale with Certification, a copy of which is attached as **Exhibit F**.)[8] Enclosed with the Notice of Sale was a "Certification Pursuant to Massachusetts 209 C.M.R. 18.21A(2)," which represented *inter alia* that Ditech has the right to foreclose because it is "the holder of the mortgage and authorized agent of the owner of the Note, which is Federal National Mortgage Association" (the "Certification"). (Id. at ¶¶ 33, 65; Certification.) A copy of the Note with all endorsements was included with the Certification. (Certification.)

The foreclosure sale was subsequently postponed to November 17, 2016.

On November 7, 2016, Shilo filed a Motion for Preliminary Injunction to enjoin the foreclosure sale. (Dk. No. 28.) The motion was denied. (Dk. No. 34; Transcript of Telephone Conference dated November 16, 2016.)

---

[7] The merger and name change is not subject to reasonable dispute and thus, this Court should take judicial note of the merger. See Rice v. Wells Fargo Bank, N.A., 2 F. Supp. 3d 25, 28, n. 7 (D. Mass. 2014) (taking judicial notice of mortgage holder's merger in case challenging standing to foreclose); Gargano v. Belmont Police Dep't, 476 F. Supp. 2d 39, 41 (D. Mass. 2007) ("In considering a motion to dismiss for failure to state a claim, a court is required to consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice.").

[8] The Notice of Sale with Certification can be considered because it is referred to and relied upon the Complaint. See supra n. 1.

ME1 23864956v.1

# ARGUMENT

**I. THE CONTRACT CLAIMS FAIL BECAUSE SHILO FAILED TO ALLEGE HE SATISFIED THE CONDITIONS PRECEDENT TO A PERMANENT LOAN MODIFICATION AND, IN ANY EVENT, THE CLAIMS ARE BARRED BY THE STATUTE OF FRAUDS.**

Shilo alleges that Ditech breached the "Loan Modification Agreement." It is not entirely clear whether he is referring to the TPP or some other alleged agreement. But the claims appears to be based on the allegation that Shilo made the TPP payments timely and the TPP "did not mention that a final written modification agreement would need to be executed by the Plaintiff in order for Plaintiff to accept the modification offer." (Complaint at ¶ 39.) This is incorrect. The TPP expressly conditioned a modification of the mortgage on *inter alia* Ditech receiving a signed modification agreement from Shilo. Specifically, the TPP provides:

> **Once you have** successfully made each of the payments above by their due dates, you have **submitted two signed copies of your modification agreement**, you have met all of the applicable qualified requirements, **and we have signed the modification agreement, your mortgage will be permanently modified** in accordance with the terms of your modification agreement.

(TPP) (emphasis added). The signing of the modification agreement was, therefore, a condition precedent to a permanent modification of the Mortgage. See Wood v. Roy Lapidus, Inc., 10 Mass. App. Ct. 761, 764 (1980) ("A condition precedent is an act which must occur before performance by the other party is due."); Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 850–51 (8th Cir. 2014) (acknowledging that borrower's obligation to sign and return permanent modification agreement and lender's obligation to sign and return the fully executed agreement were conditions precedent that must be satisfied before a contract becomes effective, absent allegations that the lender waived the condition).

While Shilo claims to have made all the TPP payments timely, Shilo does not allege that Ditech either failed to send him a permanent modification after he complied with the TPP, or that

he submitted two copies of a modification agreement to Ditech, which Ditech also signed.[9]
Thus, there was no enforceable agreement and his claim that Ditech breached an obligation to
permanently modify his loan must fail. See Pennington v. HSBC Bank USA, N.A., 493 F. App'x
548, 554 (5th Cir. 2012) (claim for breach of TPP failed because TPP expressly required that
before the modification was final, the lender must receive a signed copy of an agreement from
the borrower but plaintiffs neither produced a signed contract nor alleged that such a contract
existed).

Moreover, any claim for breach of contract is barred by the statute of frauds. The
Massachusetts Statutes of Frauds provides in relevant part as follows:

> [n]o action shall be brought ... [u]pon a contract for the sale of
> lands, tenements or hereditaments or of any interest in or
> concerning them ... [u]nless the promise, contract or agreement
> upon which such action is brought, or some memorandum or note
> thereof, is in writing and signed by the party to be charged
> therewith or by some person thereunto by him lawfully authorized.

M.G.L. c. 259, § 1. "[A] contract affecting a mortgage falls squarely within the Statute." French
v. Chase Bank, N.A., No. 10–cv–11330–RGS, 2012 WL 273724, at *2 (D. Mass. Jan. 31, 2012)
(citing cases). Courts have held the a promise to modify a loan and reduce monthly mortgage
payments falls within the statute of frauds. See id.; Hosseini v. Capital One, N.A., No. CV 15-
13979-JGD, 2016 WL 6818347, at *8 (D. Mass. Nov. 16, 2016) (Talwani, J.) (dismissing claim
alleging breach of agreement to modify loan based on statute of frauds because agreement was
not in writing).

---

[9] This Court previously held that "there's no loan modification in effect. . . In September of 2014 he was
offered a trial mortgage modification payment for which he did provide three trial payments in the fall of
2014, and he was approved in December of 2014 for a permanent loan modification. . . That proposed
agreement indicates that in order to accept the agreement, he had to sign and return the agreement by
January of 2015. I don't think there's any dispute in the record that he did not do so . . . So with the
failure to execute this agreement, no modification was entered and the loan modification was formally
denied by Ditech." (Transcript of Telephone Conference dated November 16, 2016 at 7-8.)

Here, there is no writing signed by Ditech (and/or Shilo) agreeing to permanently modify Shilo's mortgage loan. As a result, the claim is barred by the statute of frauds.

Without an enforceable contract for a permanent loan modification, Shilo's claim for breach of the implied covenant of good faith and fair dealing also fails as a matter of law. See Gifford v. Burke, No. 08 MISC 390774 AHS, 2011 WL 607108, at *5 (Mass. Land Ct. Feb. 18, 2011) (When no contract exists . . . there cannot be a breach of the implied covenant of good faith and fair dealing, as the claim and the covenant relate only to performance of the obligation."); Levenson v. LMI Realty Corp., 31 Mass. App. Ct. 127, 131 (1991) (holding where parties had not reached a binding contract, the implied covenant of good faith and fair dealing did not apply); Ciccone v. City of Newton Police Dep't, No. 054456A, 2009 WL 4282087, at *1 (Mass. Super. Ct. Nov. 5, 2009) ("There cannot be a breach of the covenant of good faith and fair dealing where there was no contract of which the implied covenant could be a part.") (internal quotations and citations omitted).

## II.    STRICT COMPLIANCE WITH PARAGRAPH 22 WAS NOT REQUIRED TO FORECLOSE (COUNT II).

This Court has already correctly held that Ditech was not required to strictly comply with paragraph 22 of the Mortgage to foreclose validly. In Pinti, the SJC held that a failure to strictly comply with the notice provisions in paragraph 22 of the mortgage renders a foreclosure sale void, but gave the decision prospective application only "to mortgage foreclosure sales of properties that are subject to a mortgage containing paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 is sent after [July 17, 2015], the date of [the Pinti] opinion." The Pinti Court did not "reach, the question whether [the] holding in this case should be applied to any other class of cases pending on appeal." Id. at 1227 n. 25 (emphasis added). That question was answered by the Appeals Court in Aurora Loan Servs., LLC v. Murphy, 88 Mass. App. Ct. 726, 756-57 (2015) where the Court extended the ruling in Pinti to cases that

were pending on appeal at the time the decision was issued and in which the paragraph 22 challenge was "raised and preserved," but expressly refused to extend <u>Pinti</u> to cases where a paragraph 22 challenge was pending in the trial court at the time <u>Pinti</u> was issued.

Here, Shilo's paragraph 22 challenge was not pending on appeal or even pending in the trial court at the time <u>Pinti</u> was issued. In fact, it was not asserted until a year *after* the decision was issued. The notice was sent to Shilo before the <u>Pinti</u> ruling (May 2015), Shilo did not assert his challenge until a year *after* the decision was issued (July 2016), and the foreclosure did not occur until after the <u>Pinti</u> decision was decided (in November 2016). As a result, the holding in <u>Pinti</u> does not apply to this case.[10] There is no justification to avoid the express intent of the SJC to apply <u>Pinti</u> to the claims asserted in this case. Indeed, to do so would completely vitiate the prospective only ruling in <u>Pinti</u>. Ditech was entitled to rely on <u>Pinti</u>'s prospective only ruling in proceeding with the foreclosure sale rather than issuing a new notice of default. Shilo's claim should, therefore, be dismissed.[11]

## III.    DITECH IS THE HOLDER OF THE MORTGAGE (COUNT III).

Shilo claims that the Mortgage was not assigned properly to Ditech by MERS and, as a result, Ditech could not foreclose. Specifically, Shilo claims that at the time MERS assigned the Mortgage, the original lender, MLN, had filed for bankruptcy and thus, MERS did not have

---

[10] Numerous courts have refused to apply the <u>Pinti</u> rule where the notice of default was sent before the date of that decision. <u>See</u> <u>e.g.</u>, <u>HMC Assets, LLC v. Conley</u>, No. CV 14-10321-MBB, 2016 WL 4443152, at *21 (D. Mass. Aug. 22, 2016) (Bowler, J.) (where notice of default pre-dated the <u>Pinti</u> decision and case was not appeal at time <u>Pinti</u> was decided, the <u>Pinti</u> rule did not apply); <u>Buba v. Deutsche Bank Nat'l Trust Co. Americas</u>, 2016 WL 2626861, at *5 (D. Mass. May 6, 2016) (state district court "correctly noted that strict compliance under Pinti was not required" because notices of default "were sent prior to the Pinti decision" and SJC gave decision " 'prospective effect only' " and the case was not "on appeal at the time Pinti was decided"); <u>Klevisha v. Provident Funding Assocs., LP</u>, No. 15-10629-MPK, 2015 WL 5315192, at *1 (D. Mass. Sept. 11, 2015) (holding that strict compliance with paragraph 22 of mortgage was not required where notice of right to cure was sent before date of <u>Pinti</u> decision and denying preliminary injunction).

[11] Moreover, Shilo cannot claim that he was somehow prejudiced by Ditech's non-compliance because, by filing this action, he exercised his right to "bring a court action" to challenge the foreclosure.

authorization from MLN to assign the Mortgage.  This argument has already been rejected by this Court in deciding the motion for preliminary injunction, and has been rejected repeatedly by other Massachusetts courts, as well.

It is well-settled that MERS may assign mortgages held in its name.  E.g. <u>Rosa v. Mortg. Elec. Reg. Sys., Inc.</u>, 821 F. Supp. 2d 423, 429 (D. Mass. 2011); <u>Woods v. Wells Fargo Bank, N.A.</u>, 733 F.3d 349, 355 (1st Cir. 2013) ("MERS, as the mortgagee of record, possessed the ability to assign [the plaintiffs'] mortgage.").[12]  It is well-settled that "[t]he dissolution of the original lender does not affect MERS' [s] authority to assign a mortgage." <u>Boguslav v. BLB Trading, LLC</u>, 136 F. Supp. 3d 11, 14 (D. Mass. 2015); <u>see also</u> <u>Rosa</u>, 821 F. Supp. 2d at 431 (accord).  Courts have consistently held that bankruptcy and dissolution of original lender does "not prevent its successors and assigns ... from seeking transfer of the mortgage from MERS." <u>Kiah v. Aurora Loan Servs., LLC</u>, 2011 WL 841282, at *4 (D. Mass. Mar. 4, 2011); <u>see also</u> <u>In re Marron</u>, 499 B.R. 1, 7 (D. Mass. 2013) (accord) (rejecting argument that dissolution of originating lender prohibited MERS from assigning mortgage); <u>Lewis v. Bank of New York Mellon Trust Co., N.A.</u>, No. CV 16-11122-FDS, 2016 WL 4555969, at *4–5 (D. Mass. Aug. 31, 2016) (originating lender's dissolution in 2008 did not prohibit MERS from assigning the mortgage in 2014).  This is so because, absent a contrary provision in the Mortgage, "a mortgagee 'may assign its mortgage to another party', and 'need not possess any scintilla of a beneficial interest in order to hold [and assign] the mortgage'." <u>Mills v. U.S. Bank, NA</u>, 753 F.3d 47, 51 (1st Cir. 2014) (quoting <u>Culhane</u>, 708 F.3d at 292-93).  Nor does MERS need authorization from the noteholder to assign the mortgage.  <u>Rosa</u>, 821 F. Supp. at 432 ("[a]n

---

[12] <u>See also</u>  <u>Culhane v. Aurora Loan Servs. of Nebraska</u>, 708 F.3d 282, 293-94 (1st Cir. 2013) (analyzing Massachusetts mortgage law to determine that MERS, as nominee and mortgagee of record, possesses the ability to transfer its interest in a mortgage); <u>Butler v. Deutsche Bank Trust Co. Americas</u>, 748 F.3d 28, 32-33 (1st Cir. 2014) (rejecting argument that MERS lacks the ability to transfer a mortgage under Massachusetts law).

assignor of a mortgage is not required to have possession of or a beneficial interest in the note in order to assign the mortgage because it holds the mortgage in trust for the note holder").[13]

Here, the Mortgage expressly identified MERS as the "mortgagee" and the "nominee for Lender and Lender's successors and assigns," represented that MERS had "legal title," and granted MERS the right to act on their behalf.  (Mortgage.)  There was no restriction in the Mortgage on MERS' ability to assign it.  As the above authorities establish, MLN's bankruptcy did not affect MERS' ability to assign the Mortgage and Shilo's claim that the assignment did not effectively transfer the Mortgage to Ditech, therefore, fails as a matter of law.

## IV.  THERE IS NO PRIVATE CAUSE OF ACTION FOR VIOLATION OF 209 C.M.R. 18.21A(2)(C) AND EVEN IF THERE WERE, THE PRE-FORECLOSURE CERTIFICATION COMPLIED WITH MASSACHUSETTS REGULATIONS (COUNT VI).

Shilo claims that Ditech violated Chapter 93A by failing to comply with 209 C.M.R. 18.21A(2)(c).  First, there is no private cause of action under the regulation.  To be sure "[a] violation of the provisions of 209 C.M.R. 18.00 [are] considered an unfair or deceptive act or practice under M.G.L. c. 93A, § 2 and subject to the penalties contained in M.G.L. c. 93A." 209 C.M.R. 18.22.  But Shilo has not asserted a Chapter 93A claim.  He cannot, therefore, proceed on a claim for violation of the regulation.  And even if he had, he did not send Ditech a demand letter under Chapter 93A, which is a prerequisite to suit.  See M.G.L. c. 93A, § 9(3); Rodi v. S.

---

[13] See also Shea v. Fed. Nat. Mortgage Ass'n, 87 Mass. App. Ct. 901, 903 (2015) ("[D]espite [the note-holder's right] to demand and obtain an assignment of the mortgage in order to enforce its security interest and collect the debt, MERS (as mortgagee) retained the right to assign the mortgage unilaterally absent any restriction in the mortgage document."); Campbell v. Fed. Nat'l Mortg. Ass'n, No. 12 MISC 469212 AHS, 2015 WL 5869510, at *7 (Mass. Land Ct. Oct. 6, 2015) (The "case law of this Commonwealth . . . is clear that MERS, which held legal title to the Mortgage, had authority to assign the Mortgage, with or without demonstrating its principal's assent."); Abate v. Freemont Inv. & Loan, No. 12 MISC 464855 RBF, 2012 WL 6115613, at *8 (Mass. Land Ct. Dec. 10, 2012), aff'd sub nom. Abate v. Fremont Inv. & Loan, 470 Mass. 821(2015) ("MERS has authority to assign the Mortgage, with or without the demonstration of its principal's assent."); Rosa, 821 F. Supp. 2d at 430 ("Since MERS was named as mortgagee and nominee for Pinnacle and Pinnacle's successors and assigns in the Mortgage, MERS was authorized to assign the Mortgage to HSBC AB1. MERS is not required prove its nominee relationship or that it had authorization to make the assignment from the current holder of the Note.").

ME1 23864956v.1

New Eng. Sch. of Law, 389 F.3d 5, 20-21 (1st Cir. 2004) (holding that statutory requirement of a demand letter "is not merely a procedural nicety, but, rather, a prerequisite to suit" that must be separately alleged in the complaint and proven at trial; and dismissing Chapter 93A claim where "neither the plaintiff's complaint nor the documents attached thereto mention" issuance of a demand letter) (internal quotations and citations omitted).[14]

Second, Shilo's claim that Ditech violated 209 C.M.R. 18.21(A)(2)(c) because it did not "certify, describe or identify any chain of ownership of the promissory note from the date of the recording of the mortgage." 209 C.M.R. 18.21(A)(2)(c) provides that:

> To the extent a servicer is authorized to act on behalf of a mortgagee . . [a] third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the right to foreclose including, but not limited to, certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon. The third party loan servicer shall provide such certification to the borrower with the notice of foreclosure, provided pursuant to M.G.L. c. 244, § 14, and shall also include a copy of the note with all required endorsements.[15]

This regulation took effect October 11, 2013, after the Supreme Judicial Court's decision in Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569 (2012), where the SJC held that, to foreclose validly, a mortgagee must hold the mortgage and also hold the note or be authorized to act on behalf of the note holder at the time the foreclosure sale.

---

[14] See also Kanamaru v. Holyoke Mut. Ins. Co., 72 Mass. App. Ct. 396, 407-08 (2008) (holding that "[n]ot only must . . . a [demand] letter be sent, a plaintiff must plead that he has complied with this requirement as a prerequisite to suit" and granting summary judgment against Chapter 93A plaintiff who failed to plead or prove that he had sent a Chapter 93A demand letter); McMahon v. Digital Equip. Corp., 944 F. Supp. 70, 77 (D. Mass. 1996) (plaintiff's failure to allege that she sent a 30-day demand letter to defendant "fatal on a motion to dismiss").

[15] Ditech does not concede that this regulation even applies to a third party loan servicer, like Ditech, who is not the foreclosing entity.

ME1 23864956v.1

Contrary to Shilo's allegation, the Certification signed by Ditech complied with the regulation. As required by 209 C.M.R. 18.21(A)(2), Ditech included a copy of the Note with endorsements with the Certification, which demonstrates the "chain of title." Specifically, the Note was originally payable to MLN. (Note.) After origination, MLN endorsed the Note in blank. (Note.) The Certification further represents that Ditech "has the right to foreclose because it is the holder of the mortgage and the authorized agent of the owner of the Note, which is Federal National Mortgage Association." (Certification.) Under the Massachusetts Uniform Commercial Code ("UCC"), a person in possession of a promissory note endorsed in blank is deemed to be the holder of that note with the right to enforce it. G.L. c. 106 §§ 3-205, 3-301. Since the Note is endorsed in blank, Fannie Mae has the right to enforce it and, since Ditech is the "authorized agent of the owner of the Note" and holds the Mortgage, Ditech had the right to foreclose.[16] The information provided by the Certification, including the copy of the Note with endorsements, is all that is needed to comply with the regulation. See Johnson v. Wilmington Trust, N.A., No. 16-CV-10422-IT, 2016 WL 5109510, at *2 (D. Mass. Sept. 20, 2016) (Talwani, J.) (holding that a certification identifying the defendant as the owner of the note and attached a copy of the note with all endorsements complied with 209 C.M.R. 18.21A(2) and rejecting plaintiff's challenge to the certification based on "[c]onjecture that there may be intermediate, unrecorded transfers is not enough to state a claim for failing to comply with 209 C.M.R. 18.21A(2)(c) where a chain of title without gaps is provided"); Perreira v. Bank of N.Y. Mellon, No. 16-11467-LTS, 2016 WL 6963032, at *2 (D. Mass. Nov. 28, 2016) (Sorokin, J.) (accord).

---

[16] Indeed, the Certification form used by Ditech is the same form recommended by Massachusetts Continuing Legal Education. Massachusetts Mortgage Foreclosures, Chapter 3: Foreclosure Procedure From Complaint Through Sale, MCLE (6th ed. 2015).

## V.  NEITHER FANNIE MAE NOR DITECH CAN BE LIABLE UNDER TILA AS A   MATTER OF LAW (COUNTS V AND VI).

Shilo alleges that Ditech violated TILA by failing to provide a periodic statement in September 2015 and failing to notify him of the "transfer of the mortgage" to Ditech.  The purpose of TILA is to "assure a meaningful disclosure of all credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid an uninformed use of credit."  15 U.S.C. § 1601.  Regulation Z, which is promulgated pursuant to § 1639 of TILA, requires a servicer of a mortgage to "provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section."  12 C.F.R. § 1026.41(a)(2).  15 U.S.C. § 1641(g) also requires that "[n]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer" and provide certain information.

Although TILA imposes an obligation upon a servicer, TILA's civil liability provision, applies only to creditors and, in some circumstances, assignees of the original creditor.  See e.g., 15 U.S.C.§ 1640(a) (providing for a private cause of action against "any creditor who fails to comply with any requirement imposed under this part") (emphasis added); 15 U.S.C. § 1641(a) (providing for assignee liability "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement").  It is well-settled that a servicer cannot be liable under TILA.  See e.g., Ording v. BAC Home Loans Servicing, LP, No. 10-10670-MBB, 2011 WL 99016, at *3 (D. Mass. Jan. 10, 2011) (Bowler, J.) (no liability for loan servicer under TILA); Thrane v. Litton Loan Servicing LP, No. 08-CV-4149 ADS ARL, 2009 WL 9121140, at *2 (E.D.N.Y. Oct. 27, 2009) (dismissing TILA claim against loan servicer because loan servicer

could not be liable under TILA unless it "is or was the owner of the obligation").[17] Thus, Ditech cannot be liable for a violation of TILA.

Moreover, since there can be no liability against a loan servicer, there can be no primary liability to attribute to the owner of the loan through agency principles. Kievman v. Fed. Nat. Mortgage Ass'n, 901 F. Supp. 2d 1348, 1352-53 (S.D. Fla. 2012) ("declin[ing] to extend liability to obligation owners—be they creditors or assignees—for their servicers' failures to comply with § 1641(f)(2)" because servicers are not liable under TILA unless they also own the loan and, as a result, "there is no question of vicarious liability for the servicer's violation if the servicer could not itself be held liable."); see also Holcomb v. Fed. Home Loan Mortg. Corp., No. 10-81186-CIV, 2011 WL 5080324, at *7 (S.D. Fla. Oct. 26, 2011) (representing that "it remains unclear what liability would transfer given that [the servicer] itself bears no liability under the facts alleged" and rejecting the plaintiff's claim that the lender was vicariously liable for its servicer's failure to respond to his request for information); Signori v. Fed. Nat. Mortgage Ass'n, 934 F. Supp. 2d 1364, 1368 (S.D. Fla. 2013) (dismissing TILA claim against Fannie Mae, as assignee, based on conduct of loan servicer under vicarious liability theory because the alleged TILA violation "occurred after the assignment when Fannie Mae owned the loan").

Further, Fannie Mae cannot be directly liable under TILA as a "creditor" and has no assignee liability under the statute. To be a creditor under TILA, a defendant must meet the requirements of a two-prong test: (1) the defendant must regularly extend consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required; and (2) the creditor must be the person to whom the debt arising

---

[17] See also Blaize–Sampeur v. McDowell, No. 05–CV–4275, 2006 WL 3903957, at *3 n. 4 (E.D.N.Y. Oct. 18, 2005) (holding that plaintiff could not bring TILA claim against loan servicer); Horton v. Country Mortgage Servs., Inc., No. 07 C 6530, 2010 WL 55902, at *3 (N.D. Ill. Jan. 4, 2010) (dismissing TILA claim against current servicer of the loan because servicers cannot be liable under TILA); 15 U.S.C. § 1641(f)(1) (expressly disclaiming liability for mere servicers "unless the servicer is or was the owner of the obligation").

from the consumer credit transaction is initially payable.  15 U.S.C. 1602(g).  "This definition is restrictive and precise, referring **only** to a person who satisfies **both** requirements of the provision."  Vincent v. The Money Store, 736 F.3d 88, 105 (2d Cir. 2013) (internal quotations and citations omitted) (emphasis in original).

Here, on the face of the Note, MLN is identified as the lender.  See Note.  Thus, the debt was initially payable to MLN, not Fannie Mae.  See Vincent, 736 F.3d at 106 (holding that defendant was not a "creditor" under TILA because, although the debt was assigned to defendant, the defendant was not the initial lender on the loans); James v. Nationstar Mortgage, LLC, No. 14-0545-WS-N, 2015 WL 1038143, at *4 (S.D. Ala. Mar. 9, 2015) (Fannie Mae was not a creditor for the purposes of TILA because plaintiff did not enter into the loan with Fannie Mae).  Thus, Fannie Mae cannot be liable as a "creditor."

Nor is Fannie Mae liable as an "assignee" for Ditech's alleged conduct.  Assignee liability under TILA is "greatly circumscribed."  Vincent, 736 F.3d at 105.  An assignee of the original creditor can only be liable under TILA if two conditions are met: (1) "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter" and (2) "the assignment to the assignee was voluntary."  15 U.S.C. § 1641(e).[18]  The disclosure statements referred to in § 1641(a) and (f) are those documents "generated in connection with the origination of the loan."  Signori, 934 F. Supp. 2d at 1368.[19]

---

[18] "[A] violation apparent on the face of the disclosure statement includes . . . a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned . . .."  15 U.S.C. § 1641(a).

[19] See also Alaimo v. HSBC Mortgage Servs., Inc., No. 13-62437-CIV, 2014 WL 930787, at *2 (S.D. Fla. Mar. 10, 2014) (accord); Evanto v. Fed. Nat. Mortg. Ass'n, 814 F.3d 1295, 1298 (11th Cir. 2016) ("The statute uses the term 'the disclosure statement' to refer to documents provided before the extension of credit."); id. at 1298 ("Several circuits, including this one, also have used the term "disclosure statement" to refer to a document provided at or before closing.") (collecting cases).

Here, Shilo's TILA claim is not based on any disclosure statements issued to him (let alone disclosure statements generated at the time of origination). Rather, the claim is based upon Ditech's alleged failure to provide a complete periodic statement after delinquency and notice of a transfer of the Mortgage. Moreover, courts have held that assignees cannot be liable under TILA for obligations that arose after the assignment took place because, by definition, post-assignment violations could not have been "apparent on the face of the disclosure statements" provided by the original creditor.[20] Vincent, 736 F.3d at 109; see also See Evanto, 814 F.3d at 1297 (dismissing TILA claim against Fannie Mae (as assignee) for failure to provide a payoff balance because such a violation was not "apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this subchapter").[21] Here, the alleged TILA violation occurred after the assignment of the loan to Fannie Mae and was not apparent on the face of any origination disclosures. As a result, Fannie Mae cannot be liable as an assignee. See Alaimo, 2014 WL 930787, at *4 (dismissing claim that assignee was liable for failing to provide the information required by 12 C.F.R. § 226.36(c)(1)(iii) because information that was provided was not a "disclosure statement" under TILA); Evanto, 814 F.3d at 1297 (no assignee

---

[20] The fact that this may allow an assignee to escape TILA liability for where the original creditor would otherwise be liable, is an issue for Congress, not the Court. Id.; see also James, 2015 WL 1038143, at *6 ("Congress appears to have made a deliberate choice to treat original lenders and assignees differently with respect to TILA liability. It is not the proper function of the federal district courts to revisit, much less overrule, that legislative determination. Any perceived unfairness or imprudence in the TILA framework is for Congress to correct, not the courts").

[21] See also James, 2015 WL 1038143, at *4 (dismissing TILA claim against Fannie Mae (assignee) for loan servicer's failure to promptly and accurately credit payments to plaintiff's account because violation would not have been apparent on the face of a disclosure statement); Lucien v. Fed. Nat. Mortgage Ass'n, 21 F. Supp. 3d 1379, 1387 (S.D. Fla. 2014); Signori, 934 F. Supp. 2d at 1368 ("documents generated after an assignment has occurred cannot form the basis of an assignee's liability under Section 1641"); Alaimo, 2014 WL 930787, at *2 (same and stating that "[t]he phrase 'or other documents assigned' [in § 1641(a)] provides strong support that Congress intended assignees to be responsible only for violations within documents that existed prior to assignment").

liability for failure to provide payoff balance); <u>James</u>, 2015 WL 1038143, at *6 (no assignee liability for servicer's failure to credit payments to consumer's account).

Moreover, even if Defendants could be subject to liability under TILA, contrary to Shilo's argument, Ditech was not required to notify Shilo of the transfer of the Mortgage through the assignment from MERS as a matter of law.  Section § 1641(g) requires that "[n]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer" and provide certain information.  However, it is well-settled that the assignment of the Mortgage alone does not trigger the disclosure requirement in § 1641(g).  <u>E.g.</u>, <u>Maddox v. Wells Fargo Bank, NA</u>, No. MJG-15-1032, 2015 WL 4069464, at *2 (D. Md. July 2, 2015) (holding that MERS' assignment transferring mortgage did not trigger the notice requirements of 15 U.S.C. § 1641(g)); <u>Terry v. Mortgage Elec. Registration Sys., Inc.</u>, No. 8:13–CV–00773–AW, 2013 WL 1832376, at *3 (D. Md. Apr.30, 2013) ("The conclusion that a nominal beneficiary's assignment of its beneficial interest in a deed of trust to the holder of underlying debt fails to implicate section 1641(g) is consistent with the decisions of other district courts.") (citing cases).  Moreover, a TILA claim must be brought within one year, 15 U.S.C. § 1640(e), and the Mortgage was assigned in 2012.  Thus, the claim is time-barred.

## VI.     THE CLAIM FOR VIOLATION OF 12 U.S.C. § 2605 FAILS BECAUSE DEFENDANTS HAD NO OBLIGATION TO NOTIFY SHILO OF THE SERVICER'S MERGER AND NAME CHANGE (COUNT V).[22]

Shilo claims that Ditech failed to provide notice of an alleged transfer of the servicing rights of the loan to Ditech.  12 U.S.C. § 2605(b)(1) requires that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale or transfer of the loan to any other person."  However, it is well-settled that "the transfer of

---

[22] Shilo asserts that the violation of 12 U.S.C. § 2605 constitutes a violation of TILA, but this statutory section is under RESPA.

servicing rights . . . via a name change[] does not trigger the notices obligations of 12 U.S.C. § 2605." <u>Yakowicz v. BAC Home Loans Serv., LP</u>, No. 12-1180, 2013 WL 593902, at * 4 (D. Minn. Feb. 15, 2013) (Frank, J.). Indeed, 24 C.F.R § 3500.21 provides, with respect to the notice requirement that "[t]ransfers between affiliates" and "[t]ransfers resulting from mergers or acquisitions of servicers or subservicers" "are not considered an assignment, sale or transfer of mortgage loan servicing . . . if there is no change in the payee, address to which the payment must be delivered, account number or amount of payment due." Courts have held that under this regulation "no transfer notice is required . . . where . . . the servicer merely [merges] or changes its name without making any other material changes, such as a change in the payee, address to which payment must be delivered, account number, or amount due." <u>Yakowicz</u>, 2013 WL 593902, at *4 (holding that servicer's name change did not require notice under 12 U.S.C. § 2605 where plaintiffs did not allege any material change affecting the servicing of their loan, such as a change in account number, payment amount, or the address to which to send payments); <u>see also</u> <u>Huckfeldt v. BAC Home Loans Servicing, LP</u>, No. 10–1072, 2011 WL 4502036, at *9 (D.Colo. Sept. 29, 2011) (Krieger, J.) (notice requirement not triggered where entity that owned the relevant loan changed its name); <u>Madura v. Bac Home Loans Servicing, LP</u>, 593 F. App'x 834, 842 (11th Cir. 2014) (holding that "[s]ervicers do not have to provide notice of transfers between affiliates or as a result of mergers" and finding that plaintiffs failed to demonstrate that a transfer of the servicing of their loan under the regulations where the servicer changed its name and subsequently merged).

Here, on August 31, 2015, Ditech Mortgage Corp. and DT Holdings LLC merged with and into Green Tree Servicing LLC and Green Tree Servicing LLC changed its name to "Ditech Financial LLC." (Certificate of Amendment of a Foreign Limited Liability Company with

Certificate of Merger.)  As the above-cited authorities establish, this merger and name change did not trigger any obligations under 12 U.S.C. § 2506(b).

## VII.    THE QUIET TITLE CLAIM FAILS.

Shilo's claim for quiet title is based on the claims alleging Ditech's standing to foreclose. But, as discussed above, the claims challenging Ditech's standing to foreclose fail.  Indeed, this Court expressly declined to enjoin Ditech from foreclosing finding that Shilo's arguments lacked merit.  Since the underlying claims fail, the quiet title claim also lacks any merit.  See Francis v. CitiMortgage, Inc., No. 11-11091-GAO, 2012 WL 1038813, at *1 (D. Mass. Mar. 28, 2012) (dismissing quiet title claim where underlying claim upon which quiet title claim was based failed).

## CONCLUSION

For the reasons set forth above, Defendants request the Court grant judgment on the pleadings in favor of Defendants on all counts asserted in the Second Amended Complaint.


DITECH FINANCIAL LLC AND
FEDERAL NATIONAL MORTGAGE
ASSOCIATION

By its attorneys,

*/s/ Amy B. Hackett*

Dated: December 16, 2016                Richard Briansky (BBO# 632709)
Amy B. Hackett (BBO# 676345)
McCarter & English LLP
265 Franklin Street
Boston, MA 02110
Phone: (617) 449-6500
rbriansky@mmcarter.com
ahackett@mccarter.com

ME1 23864956v.1

## CERTIFICATE OF SERVICE

I, Amy B. Hackett, certify that a true and accurate copy of the foregoing document was filed through the Court's ECF system this 16th day of December 2016. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system and sent by first class mail to all non-registered parties. Parties may access this filing through the Court's CM/ECF system.

*/s/ Amy B. Hackett*
Amy B. Hackett

ME1 23864956v.1