UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCEL SHILO<br><br>*Plaintiff*,<br><br>vs.<br><br><br>DITECH FINANCIAL LLC<br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION<br><br>*Defendants*. | CA NO. 1:16-CV-11564 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, the Plaintiff, Marcel Shilo, having received from Defendants Ditech Financial LLC ("Ditech") formerly known as Green Tree Servicing LLC, and Federal National Mortgage Association ("FNMA") a motion for judgment on the pleading, submits this opposition to said motion.

**INTRODUCTION**

This action was brought by Plaintiff Marcel Shilo against Defendants' Ditech Financial, LLC ("Ditech") and Federal National Mortgage Association ("FNMA") for breach of contract, wrongful foreclosure of his primary residence and quieting title of the subject property located at 97 Bishop Drive, Unit 97, Framingham, MA 01702. Plaintiff sets forth that the foreclosure sale on said residential property is null and void for the Defendants' failure to adhere to a loan modification contract entered into with the Plaintiff, wrongful foreclosure for Defendants' lack of standing to foreclosure under M.G.L. ch. 244 §14, failure to adhere to the default provisions

1

and terms of the "statutory power of sale" as stated in paragraph 22 of said mortgage, as well as, the Defendants' failures to comply with 209 CMR 18.21A(2)(c), 15 U.S.C. § 1640, 15 U.S.C. §1641(g), 12 U.S.C. § 2605, 12 C.F.R. 1026.41 and 15 U.S.C. 1638.

## MEMORANDUM OF LAW

### Facts

Plaintiff, Marcel Shilo resides at and is the owner of real property located at 97 Bishop Drive, Unit 97, Framingham, MA 01702, which is the subject property referenced herein. The Deed granting Plaintiff the Property was recorded on April 1, 1987 in the Middlesex County Registry of Deeds (South) Book 1799 page 512. On February 13, 2006, Plaintiff executed a promissory note to Mortgage Lenders Network ("MLN") and a mortgage to Mortgage Electronic Registration Systems ("MERS") as nominee for Mortgage Lenders Network in the amount of $192,000.00. The Mortgage was recorded on February 17, 2006 in the Middlesex County Registry of Deeds (South) Book 46980 Page 266. The terms of the promissory note included an interest rate of 7% and a monthly payment of principal and interest in the amount of $1277.39.

In 2008 the Plaintiff suffered a vision stroke during an open-heart surgery that significantly impacted his ability to work. The Plaintiff has been receiving SSI income since this time period. Despite his physical difficulties and reduced income Plaintiff continued to make payments in accordance with the terms of his promissory note through 2012.

During 2008 through 2012 the purported servicing on the loan was transferred several times including transfers from MLN to Countrywide, from Countrywide to Bank of America, and from Bank of America to Green Tree Servicing LLC ("GreenTree") on November 1, 2011. On April 9, 2012, MERS acting "as nominee for MLN" executed an assignment to Green Tree. The purported assignment was recorded in the Middlesex (South) Registry of Deeds on April 12,

2012 in Book 58881 at Page 568. 62 months prior to the purported assignment in which MERS claimed to be acting as nominee of MLN, on or about February 5, 2007, MLN filed for Chapter 11 Bankruptcy in the District of Delaware. On or about June 10, 2009, MLN ceased all business operations as per a Chapter 11 Bankruptcy liquidation plan, including ceasing its contractual obligation to MERS, as a MERS/MERSCORP member-user of the MERS System®, rending the assignment recorded on April 12, 2012 void. MLN cancelled its contractual obligation to MERS as a MERS/MERSCORP member-user of the MERS System® in its Bankruptcy (filed on or about February 5, 2007), wherein Schedule G (Executory Contracts/Leases) fails to include MERS as a continuing executory contract and any prior contractual relationship between MERS and MLN became null and void.

In large part due to accounting errors caused by GreenTree Plaintiff fell behind on the loan and on November 2012 Plaintiff entered into a loan modification agreement with GreenTree in which GreenTree identified itself as the "Lender" (ie. Holder of the note). The Loan Modification agreement is dated November 20, 2012 while the Plaintiff executed the agreement of November 30, 2012 and Greentree executed the agreement on December 5, 2012. The terms of the loan modification contract between the Plaintiff and Greentree recited a new principal balance of $189,242.66 to be paid monthly at 4.25% and payments of principal and interest of $603.38 beginning January 1, 2013. The loan modification contract was never recorded in the Middlesex (South) County Registry of Deeds. On or about January 23, 2012 GreenTree cashed Plaintiff's check for his timely payment of $1277.39 for January 2012. Despite cashing this check GreenTree immediately proclaimed that Plaintiff was in default for his January 2012 payment and subsequently notified credit bureaus via false information that Plaintiff was first delinquent in January 2012.

On September 29, 2014, Plaintiff received via regular mail a new modification offer from GreenTree.  The offer was presented on letterhead that stated "Know Your Options.com by Fannie Mae" and clearly stated "Mortgage Modification Offer – **YOU"RE APPROVED!**".  The Modification Offer further stated "**MORTGAGE MODIFICATION OFFER –** Stay in Your Home Option.  A modification will lower your monthly mortgage payments to $825.77 and help you avoid foreclosure.  To accept this offer and to enter into a Mortgage Modification Trial Period Plan. Follow these steps:  **Step 1**: Send your first trial Period plan monthly payment of $825.77 by 09/26/2014 and continue to make that payment each month during the trial.  Send your trial period payments to: Green Tree Servicing LLC P.O. Box 6172 Rapid City, SD 57709-6172.  **Step 2**: *To see if you are eligibale for the lowest possible interest rate (*potentially as low as 2% for the first five years after the modification).  Complete the enclosed Borrower response Package and submit by 11/02/2014.  This will NOT negatively affect your approval status." (EXHIBIT A).  In light of the fact that the Modification Offer was received by Plaintiff after the date in which Step 1 was required Plaintiff immediately wired the first payment of $825.77 to Greentree on October 1, 2015, notified Greentree via email that the payment was sent and received by Greentree and that the Borrower Response Package would be faxed immediately to complete step 2 and accept the Modification Offer.  (EXHIBIT B).  The payment and fax were send to Greentree thereby accepting Greentree's offer to modify.

On October 1, 2015, Plaintiff sent his payment of $825.77 to Greentree and continued to make monthly payments of $825.77 to Greentree for the next 16 months via electronic funds withdrawal.  (EXHIBIT C).  Despite Plaintiff's timely payments via money transfers from his checking account and despite Greentree's acceptance of such payments from Plaintiff, Greentree as well as the Defendants have falsely claimed through various communications, default letters,

and right to cure letters that Plaintiff has not made his payments under the loan modification contract since February 2015. Defendants have breached their contract with the Plaintiff by falsely claiming that Plaintiff has not made timely payments since February 2015 when Plaintiff's bank account shows timely monthly payments being paid via electronic funds transfers under that contract from October 2014 throughout the end of February 2016. (EXHIBIT D)

On August 31, 2015 the servicing of the Plaintiff's loan was allegedly transferred from GreenTree to Defendant Ditech. Plaintiff did not receive and Defendants failed to send to Plaintiff any notice of the servicing transfer in accordance with RESPA and any instruction as to where Plaintiff should make his payments to Ditech. Furthermore, Defendants failed to send and no record exists in Plaintiff's online account with Greentree or Ditech of Plaintiff's mortgage statement for September of 2015. (EXHIBIT E).

Beginning on October 16, 2015 Ditech began tendering checks back to Plaintiff for his mortgage payments claiming that the amounts that they accepted from the Plaintiff were not enough to reinstate the loan. The details of the checks from Ditech to Plaintiff consist of the following: October 16, 2015 Check number 3052791 in the amount of $825.77; November 20, 2015 Check number 3072262 in the amount of $825.77; December 24, 2015 check number 3090380 in the amount of $1651.54; January 19, 2016 check number 3114292 in the amount of $825.77; February 15, 2016 check number 3130087 in the amount of $825.77.

On April 9, 2016, Ditech responded to an inquiry by the Plaintiff in which the Plaintiff asked Ditech to explain why his payments were being sent back to him. In their response Ditech claimed that Plaintiff's account was due for February 1, 2015 despite timely payments being made from Plaintiff's checking account from October 1, 2014 to February of 2016. (EXHIBIT

F). Due to Defendants failing to send Plaintiff a mortgage statement for September 2015, Plaintiff did not make this payment until December 2015 along with his December 2015 payment. Plaintiff's double payment in December 2015 was returned to him on December 24, 2015 in the amount of $1651.54.

Plaintiff made payments under both loan modification agreements throughout 2013, 2014 and 2015 and remains ready willing and able to continue his performance of timely payments under the contract. Despite Plaintiff's timely payments via checks and money transfers from his checking account and despite Greentree's acceptance of such payments from Plaintiff, Greentree as well as the Defendants have falsely claimed through various communications, default letters, and right to cure letters that Plaintiff has not made his payments under the loan modification contract since February 2015. (SEE ATTACHED EXHIBITS SHOWING DEFAULT LETTER AND VERIFIED STATEMENT FROM REPRESENTATIVE FROM PLAINTIFF"S BANK ACCOUNT AT DIGITAL FEDERAL CREDIT UNION DATED JULY 27, 2016 THAT ALL PAYMENTS WERE SENT TO GREENTREE VIA ELECTRONIC FUNDS TRANSFER)

Defendants have breached their contract with the Plaintiff by falsely claiming that Plaintiff has not made timely payments since February 2015 when Plaintiff's bank account shows timely monthly payments being paid via electronic funds transfers under that contract from February 2015 throughout the end of 2015. On August 31, 2015 the servicing of the Plaintiff's loan was allegedly transferred from GreenTree to Defendant Ditech. Plaintiff did not receive and Defendants failed to send to Plaintiff any notice of the servicing transfer in accordance with RESPA and any instruction as to where Plaintiff should make his payments to Ditech. Defendants failed to send and no record exists in Plaintiff's online account with Greentree or Ditech of Plaintiff's mortgage statement for September of 2015.

On July 5, 2016, Defendant Ditech in accordance with the Statutory Power of Sale and Applicable Law sent Plaintiff a Notice of Foreclosure pursuant to M.G.L. ch. 244, § 14 and a "Certificate Relative To Foreclosing Party's Right To Foreclose Pursuant To 209 CMR 18.21A(2)(c)" The Notice specifies that Ditech f/k/a GreenTree intends to foreclose on August 4, 2016. The Certificate pursuant to 209 CMR 18.21A(2)(c) fails to state the "chain of title and ownership of the note and mortgage from the date of the recording of the mortgage" as the Massachusetts regulation requires because the certificate fails to state any other entity that held or owned the note prior to FNMA. The Notice of Mortgage Foreclosure Sale in invalid in accordance with M.G.L. ch. 244, 14 is invalid because Ditech is not the mortgagee at the time the notice or publications were published.

On July 25, 2016, Plaintiff filed the original action in Middlesex Superior Court along with an emergency Motion for Lis Pendens. On July 25, 2016 the Superior Court allowed Plaintiff's Motion for Lis Pendens but also scheduled the matter for a hearing on July 29, 2016. On July 28, 2016, Plaintiff filed a Motion for Preliminary Injunction to stay a foreclosure auction scheduled for August 4, 2016. Also on July 28, 2016 Plaintiff filed a first amended complaint in order to correct several minor typographical errors. The Plaintiff served the complaint and was notified by Defendants' counsel on the morning of July 29, 2016 that Defendants were removing the case to federal court and that the hearing on Lis Pendens and Injunction would be cancelled. After initially refusing to cancel the foreclosure sale, Plaintiff and Defendants' counsel agreed to postpone the foreclosure sale two weeks until August 18, 2016 and then to October 4, 2016 so that Plaintiff could be reviewed for a loan modification. After the case was removed to federal court Plaintiff's counsel further reviewed the abundance of information regarding this case from the Plaintiff and discovered that a new breach of contract claim existed with regard to a trial loan

7

modification that the Plaintiff made continuous and consistent payments on since October 2014. Plaintiff was denied his request for a modification by the Defendants and the Defendants filed an answer to the first amended complaint shortly after the modification denial was received. In response to the modification denial Plaintiff submitted an appeal and counteroffer that was also rejected. (EXHIBIT G)

## STANDARD OF REVIEW

The Federal Courts, when reviewing a Rule 12(c) Motion, have consistently held that it must take all allegations pled in the Plaintiffs' Complaint as true. The Plaintiffs have set forth a multitude of facts that if taken as true, satisfy the dictates of Federal Rule 12(c). In light of the United States Supreme Court's holding in <u>Ashcroft v. Iqbal</u>, 129 S.Ct 1937, 1951 (2009) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007); this complaint, when viewed by the Court, with all factual assertions being taken as true, "plausibly suggest an entitlement to relief." <u>Id</u>. at 1950. Further a dismissal of a complaint is disfavored and should only be granted in extraordinary cases. "A court ruling on a motion to dismiss construes the complaint in the light most favorable to the Plaintiff, taking all well-pleaded allegations as true and giving Plaintiff the benefit of all reasonable inferences. See <u>Figueroa v. Rivera</u>, 147 F.3d 77, 80 (1st Cir. 1998).

## ARGUMENT

**I. DEFENDANTS' CLAIM THAT PLAINTIFF FAILED TO ACCEPT THE MORTGAGE MODIFICATION OFFER IS INCORRECT (COUNT I)**

In accordance with Massachusetts law, plaintiffs must make the following four showings of fact to allege a breach of contract: 1) a valid contract existed between the parties, 2) plaintiffs were ready, willing, and able to perform under the contract, 3) defendants breached the contract and 4) plaintiffs sustained damages as a result of defendants' breach. <u>Bose Corp. v. Ejaz</u>, 732 F.3d 17, 21 (1st Cir. 2013). In this case the pleadings clearly establish all four elements of a

8

breach of contract claim. First, a valid contract was formed by virtue of the offer presented to modify and the Plaintiff's acceptance of that offer by making the payments of $825.77 for 11 consecutive months from October 2014 to September of 2015. The Defendants thereby performed substantially under the contract by accepting 11 monthly payments of $825.77 as stipulated in the contract and never returning or refusing such payments until 11 months later. "Trial period plans and trial plan agreements ("TPAs") have all the trappings of binding contracts". Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 348 (D. Mass 2011). The offer attached as EXHIBIT A of this opposition was a valid offer that as Paragraph 39 of the Complaint states "did not mention that a final written modification agreement would need to be executed by the Plaintiff in order for Plaintiff to accept the modification offer" but only required payments of $825.77 to be made. In Traut v. Quantum Servicing Corporation et. al, 15-13401 (D. Mass. 2016) an agreement and letter indicating that the plaintiff's mortgage would be modified upon completion of a 6 month trial period formed a valid contract. Likewise in this case a valid contract was formed when the Plaintiff's payments of $825.77 were accepted by the Defendants and the Plaintiff faxed his completed Borrower Response Form to the Defendants.

Second, Plaintiff has alleged that he remains ready, willing and able to perform under the contract. (See Paragraphs 21 and 42 of the Amended Complaint). This allegation is clearly seen by the Plaintiff's 11 monthly payments of $825.77 from October 2014 to September 2015, an amount substantially more than the monthly payments demanded on his corresponding mortgage statements for that same period of time. Third, the Defendants' breached the contract by suddenly refusing to accept Plaintiff's monthly payment of $825.77 in October of 2015 and returning Plaintiff's payments from October 2015 forward after initially accepting Plaintiff's electronic funds transfers. This refusal to accept and return Plaintiff's payments coincided with

Ditech's alleged "name change" from Greentree. The payments submitted to Greentree of $825.77 from October 2014 to September 2015 were never returned, reimbursed or credited to Plaintiff's mortgage account. Finally, the Plaintiff was damaged by the Defendants' breach of the contract because the breach resulted in the loss of his home.

## II. THE DEFENDANTS FAILED TO MEET THE BEAR MINIMUM REQUIREMENTS OF PARAGRAPH 22 OF THE MORTAGAGE

The facts set forth by the Plaintiff through his verified complaint and the exhibits attached to this memorandum is the Defendants inaccurate and patently false default letter and right to cure letter. As shown in the exhibits the default letter claims that Plaintiff did not make his monthly payments due from November 1, 2014 through May 1, 2015 in the amount of $809.35 ($603.38 Principal and Interest plus $205.97 Escrow). Contrary to this default letter, the Plaintiff's attached statement created, executed and verified by Alanna M. Kowalski, a Member Service Representative from Digital Federal Credit Union shows that the required payments from the Plaintiff's bank account were successfully transferred electronically to Greentree during all relevant time periods. In fact the Plaintiff's bank account shows that he paid more than the required amounts ($825.77 paid monthly from November 2014 through February 2016).

In his complaint the Plaintiff has pled well-supported allegations that the foreclosing entity did not comply strictly with the terms of the mortgage. In Massachusetts a foreclosure by power of sale requires that a foreclosing bank must "comply [] with the terms of the mortgage…" (G.L. c. 183, § 21). Further, if a bank fails to strictly comply with the power of sale and the terms of the mortgage, then a foreclosure is void. See: U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 428 (2014) ("Failure to comply strictly with the power of sale renders the foreclosure void."); Paiva v. Bank of New

York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice … did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.")

The letter offered by Greentree on May 27, 2015 does not meet the minimum requirements of paragraph 22 of the mortgage because it does not inform the Plaintiff of his right to *bring* (prosecute) a court action to assert the non existence of a default and does not accurately reflect the true balance and payments due on the mortgage loan. (Exhibit 4). Rather, the letter deceivingly states that the Plaintiff could only assert the non-existence of a default "in the foreclosure proceeding or any other defense". Furthermore the prospective application of Pinti did not dispose of the minimum requirement of complying with the terms of the mortgage. See Federal Home Loan Mortgage Corporation v. Bojarski, Hampden County Land Court Do No # 15-SP-1674. (January 29, 2016). The foreclosure is therefore void. U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) ("the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to"); See also Paiva v. Bank of New York Mellon, USDC Mass. 14-1453, August 11, 2015 (Burroughs, A.) ("Because the Court finds that Countrywide's notice … did not strictly comply with the requirements of paragraph [22] of the mortgage, the foreclosure sale is void.").

### III. DITECH WAS NOT THE HOLDER OF THE MORTGAGE BY VIRTUE OF AN ASSIGNMENT FROM MORTGAGE ELECTRONIC REGISTRATION SYSTEMS

The Plaintiff alleges that the foreclosing entity was not the mortgagee at all times relevant to the exercise of the statutory power of sale, foreclosure, and foreclosure sale and the resulting foreclosure sale was wrongful, without legal effect and is void. The foreclosing entity, Defendant Ditech, purportedly became the mortgagee via an from Defendant Mortgage Electronic

Registration Systems, Inc. ("MERS") acting solely as nominee for Mortgage Lender network to Greentree Servicing LLC. However, prior to the assignment in which MERS was claiming to act on behalf of Mortgage Lenders Network, Mortgage Lenders Network ceased all business operations, including ceasing its contractual obligation to Defendant, MERS, as a MERS/MERSCORP member-user of the MERS System®.

Furthermore, Mortgage Lenders Network cancelled its contractual obligation to Defendant, MERS, as a MERS/MERSCORP member-user of the MERS System® in its Bankruptcy Petition (wherein Schedule G (Executory Contracts/Leases) fails to include MERS as a continuing executory contract and any prior contractual relationship between MERS and Mortgage Lenders Network became null and void. MERS, was without contractual authority to act as nominee on behalf of lender Mortgage Lenders Network and had nothing to assign, rendering the above noted assignment void. (See DiLibero v. Mortgage Electronic Registration Systems, Inc. RI Supreme Court, No. 2013-190-Appeal; PC-11-4645 (Jan 14, 2015)). (See also Culhane v. Aurora Loan Services of Nebraska, 708 F.3rd 282, 291 (1st Cir. 2013). As such, all subsequent assignment in the chain of assignments leading to Ditech are void, Ditech was not the mortgagee at all times relevant to the exercise of the statutory power of sale, foreclosure, and foreclosure sale and the resulting foreclosure sale was wrongful, without legal effect and is void. The Plaintiff sets forth that Defendants were not the mortgagee at all times necessary to notify and foreclose on said property because the previous assignment of mortgage from MERS as nominee of Mortgage Lenders Network, to Greentree is void. The allegations in the complaint establish that Mortgage Lenders Network terminated its nominee relationship with MERS via bankruptcy prior to the alleged assignment of the Plaintiff's mortgage.

Although Massachusetts decisions cited by the Defendants seem to clearly state that MERS may assign a mortgage under these circumstances it appears that no case address a situation such as the one in this case when the entity in which MERS is acting as nominee affirmatively rejects its relationship with MERS. In <u>Dilibero</u> the Rhode Island Supreme Court held that in light of New Century's actions in Bankruptcy Court rejecting its relationship with MERS, "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease" 11 U.S.C. 365(g). Therefore when New Century filed its rejection of the executor contract with MERS, the contract was breached and its relationship with MERS was terminated. Thus, the subsequent assignment of the mortgage executed by MERS would be void ab initio because the assignor, MERS had nothing to assign. <u>Culhane v. Aurora Loan Services of Nebraska</u>, 708 F.3d 282, 291 (1st. Cir 2013); 17A Am. Jur. 2d. <u>Contracts</u> 10 at 45-46 (2004) ("A void contract is void as to everybody whose rights would be affected by it if it were valid")/ Likewise in this case MLN in its' bankruptcy failed to list under the penalties of perjury its' contract with MERS thereby rejecting any such contract appointing MERS as its' nominee in accordance with the terms of the mortgage. It follows that the assignment in this case is void ab initio as well because it was executed and recorded well after the rejection of MLN's executory contract with MERS. Therefore the assignment from MERS as nominee of MLN to Greentree failed to give standing to Greentree and Ditech upon the name change.

IV. **DITECH MAY BE LIABLE UNDER TILA AS A MATTER OF LAW BECAUSE IT IS THE HOLDER OF THE MORTGAGE AND FANNIE MAE MAY BE LIABLE UNDER TILA AS THE HOLDER OF THE PROMISSORY NOTE**

The Defendants' claims that neither Ditech nor Fannie Mae are deemed "creditors" for the purposes of liability under TILA may appear valid at first glance. However a closer look at the definition of a creditor under TILA may result in a contrary conclusion. To be a creditor

under TILA one must meet the requirements of a two prong test: 1) one must regularly extend consumer credit "which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required;" and 2) the creditor must be "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement". Ording v. BAC Home Loans Servicing LP, No 10-10670, 2011 WL 99016, (D. Mass. Jan. 10, 2011); Harris v. Option One Mortg. Corp., 261 F.R.D. 98,105 (D.S>C. 2009) Roach v. option One Mortg. Corp., 598 F.Supp,2d 741,749 (E.D. Va. 2009). As the owner of millions of 30 year promissory notes and mortgages in the United States there is no doubt that Fannie Mae regularly extends credit payable by agreement in more than four installments. As to the second prong while Fannie Mae is not regularly the person identified on the promissory note as the party initially payable there is also no doubt that "by agreement" the promissory note in this case was ultimately to be paid to Fannie Mae as this was a Fannie Mae loan from the moment the loan was initially agreed to. Therefore Fannie Mae is a 'creditor" for purposes of TILA and may be held liable under the regulation for its servicer agent failing to send the Plaintiff his monthly mortgage statement as a lender may be held vicariously liable for its servicer's violation of regulation Z. ( See Rouleau v. US Bank, NA, C.A. No. 14-cv-568-JL, Op. No. 2014 DDH 084 (D.N.H., Apr. 17 2015).

**CONCLUSION**

Here, as the Plaintiff has sufficiently pled and demonstrated that Ditech and Fannie Mae breach its contract with Plaintiff, failed to comply with the power of sale of the mortgage and related foreclosure statutes and failed to demonstrate adequate standing as mortgagee, the Defendants Motion for Judgment on the Pleadings must be denied. Plaintiff requests that the

14

Court deny the motion, void the foreclosure, and any other relief as this Court may deem necessary.

WHEREFORE, the Plaintiff, Marcel Shilo respectfully request this Honorable Court deny the Defendants' Motion for judgment on the pleadings

Dated: February 2, 2017

> Respectfully Submitted, Plaintiff,
> Marcel Shilo
> By his Attorney, Todd S. Dion,
>
> /s/ Todd S. Dion, Esq_____
> Todd S. Dion Esq. (659109)
> 15 Cottage Avenue, Suite 202
> Quincy, MA 02169
> 401-353-1230 Phone
> 401-353-1231 Fax
> toddsdion@msn.com

CERTIFICATE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to all non-registered participants February 2, 2017.

> /s/ Todd S. DION
> Todd S. Dion